```
                                                                    1

 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA,      : 21CR80 (NGG)
 4                                  :
              Plaintiff,            :
 5                                  :
            -against-               : United States Courthouse
 6                                  : Brooklyn, New York
     DOUGLASS MACKEY,               :
 7                                  :
              Defendant.            : Friday, May 6, 2022
 8                                  : 4:00 p.m.
                                    :
 9                                  :
                                    :
10   - - - - - - - - - - - - - - X

11          TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION HEARING
             BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
12                   UNITED STATES DISTRICT JUDGE

13                      A P P E A R A N C E S:

14   For the Government:  UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
15                         271 Cadman Plaza East
                           Brooklyn, New York 11201
16                      BY:ERIK DAVID PAULSEN, ESQ.
                           OLATOKUNBO OLANIYAN, ESQ.
17                         Assistant United States Attorneys

18                         DOJ-Crm
                           1331 F Street NW, Suite 300
19                         Washington, DC 20004
                        BY:WILLIAM J. GULLOTTA
20                         (Via teleconference)

21   For the Defendant:    ANDREW J. FRISCH, ESQ.
                           40 Fulton Street
22                         New York, NY 10038

23   Court Reporter:    SOPHIE NOLAN
                        225 Cadman Plaza East/Brooklyn, NY 11201
24                      NolanEDNY@aol.com
     Proceedings recorded by mechanical stenography, transcript
25   produced by Computer-Aided Transcription
```

Proceedings 2

(In open court.)

(The Hon. Nicholas G. Garaufis, presiding.)

(Defendant present.)

THE COURTROOM DEPUTY: Criminal cause for a motion hearing.

Counsel for the Government, please state your appearances for the record.

MR. PAULSEN: Good afternoon, Your Honor. Erik Paulsen and Olatokunbo Olaniyan for the U.S. government.

THE COURT: Good afternoon.

MR. FRISCH: And for Mr. Mackey, Andrew Frisch. Good afternoon. And Mr. Mackey is present.

THE COURT: Good afternoon.

Please be seated, everybody.

And we have someone on the phone as well?

THE COURTROOM DEPUTY: Mr. Gullotta.

MR. GULLOTTA: This is Mr. Gullotta from the Public Integrity Section on behalf of the United States.

MR. PAULSEN: Thank you, Your Honor, for letting him appear. He's been ill and didn't want to be here in person.

THE COURT: Well, feel better.

MR. GULLOTA: Thank you, Your Honor.

THE COURT: So this is on a motion for a bill of particulars and let me hear from the defense first.

MR. FRISCH: Thank you, Judge. So --

1         THE COURT: And welcome, nice to see you again.

2         MR. FRISCH: Good to see you, Your Honor. Thank

3 you.

4         I think the parties' submissions on this motion have

5 served and I think productively so to refine the issues that

6 we're here to talk about today. Mr. Mackey seeks something

7 different from what the Circuit has described as the whats,

8 the wheres, the with whoms, of which particulars are

9 inappropriate. For what he's seeking there's no prejudice to

10 the Government in clarifying the conflicting publicly

11 available information; that is, by saying in a Rule 7(f), Bill

12 of Particulars, which of the four conspiratorial objects apply

13 here.

14         There's no prejudice to the Government in doing so

15 in a Rule 7(f) form to answer the question, given that the

16 crime is conspiratorial intent, did Mr. Mackey's intent do one

17 of those four things, yes or no. I'm not asking for the

18 detail if the answer is yes. We'll figure it out and if we

19 have questions we'll talk to that more informally, but our

20 requested particular calls for a yes or no answer. And,

21 lastly, staying in a (f) form what they otherwise say in sum

22 and substance at page ten of their memorandum of law, but not

23 in the same way that it has the same effect as a pleading,

24 which is: Is Mr. Mackey charged with posting two deceptive

25 images or so-called memes to a Twitter account in the context

1  of participating in chat rooms frequented by publicly
2  like-minded others.  The Government may quibble with my choice
3  of words, that's fair.  But to say it in a Rule 7(f) Bill of
4  Particulars as opposed to page ten --
5              Here is why this is important because I think the
6  overlay between this motion and the motion to dismiss is
7  precisely why it's important.  We're about to dig in on a
8  motion to dismiss on some especially important Constitutional
9  issues of first impression.  I don't think it's hyperbole to
10 say that not just Your Honor or Mr. Mackey and the people in
11 this courtroom are going to be dealing with these issues, but
12 I don't think it's hyperbole that this colloquy, and the
13 colloquy to follow on subsequent motion practices, is going to
14 be looked at by judges, legislators and law clerks and
15 Congressional staffers and think groups about whether or not a
16 Constitutional needle of sorts can be thread without
17 puncturing protected rights, like the freedom of speech and
18 the freedom of association.
19             And even more so in the context of Twitter, where
20 Judge Abrams across the river recently said, and this is a
21 paraphrase:  It's a shooting gallery akin to the wild west
22 where verbal gunslingers engage in prolonged, hyperbolic
23 crossfire.
24             So, I think we all need to be reading from the same
25 hymn book before we start digging into what are going to be

1 intricate and difficult motions with or without the requested
2 particulars and all we're seeking to do is to find the
3 landscape.
4     The requested particulars that we lay out on page --
5 that I lay out on page 18 of my initial brief but which I have
6 summarized just now by the three things that I think should be
7 in a Rule 7(f) Bill of Particulars give us answers to defend
8 the case. They help the Court in resolving the Constitutional
9 issues raised by this case and they -- and they narrow the
10 focus in what otherwise is going to be, I think, interesting,
11 but certainly intricate and intense litigation on important
12 Constitutional issues.
13     THE COURT: Mr. Paulsen?
14     MR. PAULSEN: Thank you, Your Honor. I think in
15 this particular case, Your Honor, the Government believes that
16 it's been fairly clear about what its allegation is. The
17 defense as it notes in its briefing, the indictment in this
18 case which is a notice indictment which tracks the statute is
19 itself brief, but it was preceded by a 25-page complaint in
20 which the Government laid out its theory of this case and if
21 it is not already clear, the Government has made it clear that
22 the Government believes that the conduct outlined in the
23 complaint violates the statute 18 USC 241.
24     The government went into a long discussion of what
25 bills of particulars are for and what they are for not, what

1  what they can do and what it's not supposed to do in its
2  briefing because the Government believes that the requests
3  that are being made by the defense counsel in this case go
4  beyond the notice requirement that a bill of particulars is
5  meant to address.  The Bill of Particulars is about notice.
6  It's, does the defendant understand what he's being charged
7  with.
8         The complaint, the voluminous discovery, numerous
9  search warrant affidavits which all go into the details of the
10 case in addition to the indictment, the Government submits
11 that all of these documents together make it quite clear what
12 it is that we're charging.  Frankly, much of the briefing is
13 an attack on the Government's charging theory, but that attack
14 suggests that defense counsel does know what it is that we are
15 charging.  They disagree with it, clearly, and we anticipate
16 that there will be some robust briefing on the motion to
17 dismiss on these topics because I think defense counsel knows
18 what the government is alleging.  They just purely don't
19 agree.  The four specific requests that were put forward --
20         THE COURT:  They don't agree there's a legal basis
21 for utilizing the statute for the conduct that the
22 defendant -- some of the conduct that the defendant arguably
23 or admittedly was involved in on Twitter.
24         MR. PAULSEN:  Precisely, yes, Your Honor.  I think
25 that's right.  But I think the reason defense counsel can

essentially make these arguments to Your Honor in these papers at this juncture is because they do understand what the Government is alleging.  They frankly think it doesn't fit under 241, the statute, or there's other Constitutional infirmities.

        THE COURT:  I understand your position and I understand the defendant's position, but looking at the fourth issue raised by the defense, which is the basis for venue, I'm curious about the Government's -- that's a -- that's a pretty straightforward legal question or it used to be anyway --

        MR. PAULSEN:  Yes, Your Honor.

        THE COURT:  -- before the internet.

        What is your theory of venue in this case involving a Twitter feed?

        MR. PAULSEN:  Yes, Your Honor, the -- as we noted in page 14 of our brief, the Government's theory is primarily that the defendant used Twitter, which is a social media application that is meant to broadcast messages far and wide.

        THE COURT:  Far and wide?

        MR. PAULSEN:  Yes, Your Honor.

        THE COURT:  So, would you say that there's venue in every state and hamlet of America based on the fact that it could be -- a Twitter feed could be received or seen anywhere in the country?

        MR. PAULSEN:  Potentially, Your Honor.  And the

Proceedings 8

Government isn't making that allegation but I think there are child pornography cases, for example, that gesture in that direction; when materials are put on the internet such that they can be grabbed in any place, that could be a possible, you know, consequence of the use of a social media application like Twitter, but in this particular case, Mr. Mackey was living in New York around that time.  He was living across the river in the Southern District of New York, but the Government's assertion is that the use of Twitter in this, he did foreseeably avail himself of the EDNY District --

THE COURT:  All right --

MR. PAULSEN:  Your Honor, we did answer, although we do not believe that this is necessary, given that -- the posture of the case at this moment in the posture of a bill of particulars.  We did in essence answer it.

THE COURT:  We will have to address this when we come to the motion to dismiss.

MR. PAULSEN:  Yes, Your Honor.  But --

THE COURT:  I am just curious I'm trying to get ahead of the project to see what's next.  You know counsel says that, you know, this is a case of first impression and, you know, people are going to be looking at this.  I look at it a little differently.  My view is that it's the first stop on the local and there are 42 stations after this station.

So whatever this court does is going to be examined

1  at other levels and in other courthouses and so forth in that
2  it will be useful to other judges.  I don't see this as the
3  holy grail that I'm about to issue.  Let me just point that
4  out.
5              MR. PAULSEN:  Yes, Your Honor.  In regard to the --
6  there is one other aspect of the motion that the government
7  found troubling which we brought to your attention.  On page
8  13 of the defendant's brief he asked the Court to quote
9  unquote, bind the Government to answers to these particulars.
10 The Government believes that the particular themselves go
11 beyond the notice requirements of the bill of particulars but
12 further there seems to be some effort at this early stage in
13 what will likely be some robust litigation to not just ask for
14 the things that the Government believes are frankly factual,
15 but to ask that the Government essentially be held to its
16 answers.
17             The case law that we address in pages eight to nine
18 of our brief, make clear that the purpose of a bill of
19 particulars is not to lock the Government into certain
20 answers.  The Government is entitled to develop its case as it
21 goes towards trial.  As is often the case, the Government will
22 review evidence and make connections among the way or realize
23 the importance of some piece of discovery that was not before
24 fully appreciated.  It seems that part of what is happening
25 here is that the defense is not necessarily looking for

Proceedings 10

clarity but looking to lock the defendant -- the Government into answers that we just don't believe at this juncture we're required to give.

But, that being said, Your Honor, there is -- I think in the larger sense I don't believe the parties are misunderstanding each other. We have attempted through our complaint to make clear what our charging theory is and we have had discussion with defense counsel about that. To the extent that defense counsel has pointed out a press release or a -- I think there's a Reuters article with some anonymous people talking about the case, the Government wants to make it crystal clear to the extent we are provided notice about what our charging theory is, that notice is the indictment, the complaint, the various affidavits and the discovery.

Those are the things that we are relying upon and we want to be clear that in the complaint we are saying that that conduct violates a statute that that's the Government's theory of the case.

THE COURT: Mr. Frisch, aren't most of these arguments better left for a motion to dismiss? What is it that is lacking? That's what I am trying to get to? What is lacking in the materials that have been provided thus far that is so essential to your ability to make a motion?

MR. FRISCH: Well, there certainly is an overlay and there are certainly issues that are raised in this motion that

are -- that will be part of the litigation on a motion to dismiss. However, this is the unusual case where there is so much publicly available information that sheds light on what this is about. The Government should not be permitted to pick and choose; look at this, look at that.

What the Government should do is say in a Rule 7(f) Bill of Particulars, this is it. I'm not asking them for evidentiary detail. I'm not seeking to limit their presentation of proof, but they indicted this case. They have used language in the litigation of this motion that what Mr. Mackey did is interfere with the right to vote. That word doesn't appear in Section 241 of the charged crime. It appears in Section 245. So which is it; interfere, injure, oppress, threaten or intimidate?

Telling us which one of those does not limit them and it's not the withs, wheres, whats and with whoms that the Second Circuit said is beyond the scope of this kind of motion. It's precisely what are you charging him with. There is the press release where the United States attorney of this district and also the Southern District of New York, gave the public a comprehensive paragraph of what voting law prohibits. What I think is in this case is not in there and maybe that means that I have read the bread crumbs correctly and the tea leaves correctly, but that's not what the Constitution requires.

1     The Constitution requires, due process requires for
2  the Government to say so and not rely on the defendant's
3  ability to figure it out.  Here, in this case, where it's
4  unprecedented there is no preexisting template and it's
5  confusing as to what they're saying.
6     My concern is -- one of my concerns is this:  If
7  it's so clear why not put it in a Rule 7(f) or are they
8  concerned that if they do so, it's going to be more apparent
9  than not that there is no proper Constitutional basis for this
10 prosecution, so it's the unusual array of publicly available
11 information, the Government's own use of the word
12 "interference," the FBI saying that what Mr. Mackey did is
13 essentially steal votes, the failure of anything like this
14 case to be in the Public Integrity Section's comprehensive
15 compendium of long-related cases that requires the Government
16 to answer simple questions that are not what the Second
17 Circuit -- not what the Second Circuit prohibits.
18     I think on venue, you will have -- to use
19 Mr. Paulsen's word, a robust discussion about venue and the
20 recent Third Circuit cas e on that issue to see whether in
21 fact the Eastern District of New York is what the law refers
22 to as the locus delicti of this crime or whether it's
23 appropriate in the era of mass interconnectivity for the
24 Government to pick and choose to bring a case anywhere.
25 That's an issue we will be litigating before Your Honor for

1  sure.

2  But I think given the conflict about all the
3  available information about what precisely this case is and
4  given the willingness to say so, I don't understand the
5  resistance and reluctance to do it in a Rule 7(f) form.

6  MR. PAULSEN:  As I noted a moment ago, there are
7  various sources that have discussed this case, but I would
8  like to be clear there is a complaint that is sworn out by our
9  case agent and there's an indictment that's signed by the U.S.
10 Attorney.  Those are the documents that we're referring to.
11 To the extent that there are other documents out there that
12 seem to suggest something slightly different, I would ask that
13 the defendant rely upon the case documents here, the actual
14 complaint sworn out that initiated this prosecution.

15 THE COURT:  I think a question is are you going to
16 limit yourselves to the reasonable scope of what's in the
17 complaint or are you going to engage in a broader enterprise
18 of looking at -- there are so many materials on this subject
19 around -- that are floating around in the ether and are the
20 subject of commentary on Fox and MSNBC and the Wall Street
21 Journal and the New York Times on what has happened to the
22 body politic in regard to the electoral process and that's
23 still happening.

24 MR. PAULSEN:  Yes, Your Honor.

25 THE COURT:  I mean, all you need to do is turn on

1  the television on Channel 7 at 8 a.m. in the morning and
2  they're having a debate over the electoral system and
3  redistricting and other issues.  So there is a plethora of
4  material and I think Mr. Frisch's point at least is that there
5  has to be some structure and the question from the Court at
6  this point as posed is do I insist upon a structure to be
7  defined by a bill of particulars?
8        MR. PAULSEN:  Yes, Your Honor.  I would answer it
9  this way:  First off, this case is obviously about a narrow
10 two-month period in 2016.
11       THE COURT:  Right.
12       MR. PAULSEN:  And so although there is obviously
13 interesting things happening in the world these days, this is
14 about what happened six years ago.  The I don't think the
15 defendant would disagree that the complaint the search warrant
16 in this case have all been fairly consistent in the conduct
17 that's alleged as being at the core of this investigation.  To
18 the extent that words like "interfere" which I used a synonym
19 for the conduct in the brief, which led Mr. Frisch to believe
20 we were referencing 18 USC 245.  It's not the case.  It's
21 still 18 USC 241.  Your Honor will see when we brief this in
22 the motion to dismiss that the statute uses four verbs to
23 describe the kind of conduct.  The jury instructions on these
24 matters talk about these are terms of art that encompass a
25 type of activity which is -- which we believe encompasses the

1  conduct that is described in the complaint, but we do think it
2  would be inappropriate, Your Honor, to -- the invitation to
3  essentially ask that the Government's case be essentially
4  frozen in amber at this point because of a difference in verb
5  between a complaint and a brief.
6           As all of the bill of particulars cases state, the
7  Government is entitled to develop its evidence and develop its
8  case on the way to trial.  That being said, I anticipate the
9  core of it will be exactly what has been alleged.  In all the
10 documents in this case, that is the government's intent and
11 that's what the discovery that defense counsel has supports.
12          THE COURT:  Can I ask a question about legislative
13 history here?
14          MR. PAULSEN:  Sure.
15          THE COURT:  Have you examined the legislative
16 history of the statute which is post velum statute during
17 reconstruction?
18          MR. PAULSEN:  Yes, Your Honor.
19          THE COURT:  Have you?
20          MR. PAULSEN:  I've read the cases, yes, and I've
21 read the commentary that Mr. Frisch provided us.  I know the
22 statute came up in various senate hearings over the years.  I
23 don't know that I've reviewed the legislative history from the
24 Klu Klux Klan Act precisely, but I've read it extensively.
25          THE COURT:  Sometimes there have been efforts to

Proceedings 16

enact legislation that would deal with this type of situation and it has not -- Congress has not enacted additional legislation to modernize, if you will, the resources that are available to deal with what you claim is -- what you might be claiming, what you might be claiming is the conduct here.

MR. PAULSEN: Yes, Your Honor. There have been efforts. There was -- one of Mr. Mackey's tweets was on a big poster board in a 2017 senate committee in which they discussed adding additional prosecutorial tools and Mr. Frisch pointed out that statute didn't pass. That's right. But, Your Honor, the DOJ's Election Protection Division and the Civil Rights Division which handles these sorts of cases, they are obviously supportive of new tools that would allow the government to address conduct such as this, but they take the position that existing tools such as 241 do encompass this activity. It's obviously the case the Government is looking for additional ways for dealing with certain conduct, but that's not the same as saying the existing tools can't reach it. There are many reasons to which there would be additional statutes in this sort of sphere which is not the same as saying the existing statute can't reach it. I mean, that will obviously be an issue of dispute in this case.

THE COURT: Which of the four words in the statute most closely -- most closely addresses the conduct that you say is illegal?

SN    OCR    RPR

1      MR. PAULSEN:  I believe the first, Your Honor the
2 first, injury.
3      THE COURT:  I am not going to resolve this this
4 afternoon, but it's useful to have your views on it, frankly.
5 I have generally over the last 22 years taken a -- my
6 perspective has been if there is a complaint and if discovery
7 has been fulsome, that the Court is not going to require a
8 bill of particulars.  This is an unusual situation.  So I'm
9 going to give it a close look.  But I do think that many of
10 these questions need to be addressed in your motion to
11 dismiss.
12      Did you want to talk about the motion to dismiss
13 schedule?
14      MR. FRISCH:  A schedule was set -- the Government
15 and I were talking about that before Your Honor took the
16 bench.
17      THE COURT:  I have it here.
18      MR. FRISCH:  We talked about the need to maybe
19 adjust some of the dates for one reason or another and we
20 thought maybe the best way to handle it is to see how the
21 drafting goes and if we need to propose to the Court that we
22 recalibrate the schedule, we do it closer to the current due
23 date as opposed to doing it today, but we probably envision
24 some kind of recalibration of one sort or another.
25      THE COURT:  In doing so would you consult with

1  Mr. Raccoppa, my case manager, so we can establish a date for
2  oral argument that works for everybody and then I will exclude
3  speedy trial time until that date.
4      MR. FRISCH:  Of course, Judge, yes.
5      THE COURT:  Is there anything else for today from
6  the Government?
7      MR. PAULSEN:  May I consult with my partner?
8      (Pause in proceedings.)
9      MR. PAULSEN:  Your Honor, I don't have anything else
10 to add.  I'm certainly happy to address any other questions
11 you have on this, but it sounds like Your Honor is up to speed
12 on the facts.
13     THE COURT:  I think so.
14     Is there any other paperwork on this that you wish
15 to submit on this?
16     MR. FRISCH:  I don't think so, Judge, no.
17     THE COURT:  All right.  Where does Mr. Mackey live
18 actually?
19     MR. FRISCH:  He lives in the State of Florida.
20     THE COURT:  He lives in Florida?
21     MR. FRISCH:  Yes.
22     THE COURT:  All right.  Well, I will reserve and let
23 you know as soon as possible.
24     MR. FRISCH:  Thank you, Judge.
25     MR. PAULSEN:  Thank you.

Proceedings 19

1 THE COURT: Have a nice day, have a good weekend.
2 Safe travels.
3 MR. PAULSEN: Thank you, Your Honor.
4
5 (Matter adjourned.)
6
7 - ooOoo -