UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x

UNITED STATES OF AMERICA

       - v -            Criminal Case No. 21-0080 (NGG)

DOUGLASS MACKEY,

    Defendant.

-------------------------------------------------- x

MEMORANDUM OF LAW IN SUPPORT OF
DOUGLASS MACKEY'S MOTIONS *IN LIMINE*
AND ADDRESSING VACCINATION OF JURORS

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorney for Douglass Mackey*

January 30, 2023

TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | *The Government Must Comply with F. R. Cr. Pr. 5(f)* | 3 |
| B. | *The Court Should Not Require Jurors to be Vaccinated* | 5 |
| C. | *The Court Should Preclude the Government's Use of Protected Speech Preceding September 2016* | 8 |
| D. | *The Court Should Preclude Evidence that Fails to Satisfy the Requirements of F. R. Evid. 801(d)(2)(E)* | 9 |
| E. | *The Court Should Preclude Twitter's Reasons for Suspending Ricky Vaughn's Twitter Account and conclusions of MIT Media Lab About the Account's Popularity* | 12 |
| F. | *Even if the Congressmen Described in the Complaint is Relevant, the Court Should Preclude Evidence of His Identity* | 13 |
| G. | *The Court Should Preclude Inflammatory Language* | 13 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------- x

UNITED STATES OF AMERICA

       - v -                                            Criminal Case No. 21-0080 (NGG)

DOUGLASS MACKEY,

       Defendant.

------------------------------------------------- x

MEMORANDUM OF LAW IN SUPPORT OF
DOUGLASS MACKEY'S MOTIONS *IN LIMINE*
AND ADDRESSING VACCINATION OF JURORS

Introduction

       This Memorandum is submitted on behalf of Douglass Mackey in support of motions *in limine* based on the current state of his preparation for trial. This Memorandum also responds to the Court's order of January 23, 2023, directing the parties to "inform the court in writing of any objections to a fully vaccinated jury."

       As preparation for trial continues, the parties continue to discuss ways that the trial can be conducted as efficiently as possible, including the timing of the government's identification of its exhibits and disclosures pursuant to 18 U.S.C. § 3500. If and as other issues are identified before trial, the defense will so advise the Court.

A.    *The Government Must Comply with F. R. Cr. Pr. 5(f)*

       The government has advised the Court and Mr. Mackey that its evidence at trial will significantly track the allegations of its Complaint in this case, filed on January 22, 2021. *See* Docket No. 1 (the "Complaint" attached as Exhibit A). At the recent pretrial conference, the government advised the Court that its case agent from the Federal Bureau of Investigation at the

3

government's table for trial will not be Special Agent Maegan Rees, who signed the Complaint against Mr. Mackey and described her investigative qualifications and familiarity with and participation in the government's investigation of Mr Mackey as a preamble. Exhibit A at 2. If the government does not call Agent Rees as a witness a trial, it will not be obliged to produce her investigative reports pursuant to Section 3500. Whether or not the government calls Agent Rees as a witness, however, the government should immediately produce reports of Agent Rees and any government agent within the scope of F. R. Cr. P. 5(f) and *Brady v. Maryland*, 373 U.S. 83 (1963).

The issues at trial are expected to include whether (1) Mr Mackey intended to injure, oppress, threaten and intimidate the free exercise of the constitutional right to vote in purported violation of 18 U.S.C. § 241; (2) Mr. Mackey believed that any registered voter could reasonably have believed that an official ballot for President could be texted in response to a retweeted meme; and (3) whether this District is proper venue for the case. The following is a non-exhaustive list of the types of evidence which would tend to exculpate Mr. Mackey within the meaning of Rule 5(f) and *Brady,* which the government should immediately be ordered to disclose if in its possession:

- evidence that any person who saw or responded to one of the memes described in the Complaint doubted that the meme represented an official invitation to vote via text or otherwise truly offered a way for a registered voter to cast a valid ballot for President;

- evidence that any person who saw or responded to one of the memes described in the Complaint was skeptical of the validity of information disseminated via Twitter specifically or the Internet generally or otherwise held views consistent with sentiments of judges within this Circuit, who have characterized Twitter as a Wild West "shooting gallery . . . where verbal gunslingers engage in prolonged hyperbolic crossfire." *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) (Abrams, U.S.D.J.) (dismissing claim of defamation based on tweets); and *Brahms v. Carver*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) (Vitaliano, U.S.D.J.) (questioning reasonable reliance on statements "made on an internet forum where people typically solicit and express opinions, generally using pseudonyms"); *see also Jacobus v. Trump*, 55 Misc. 3d 470,

484-85 (N.Y. Sup. Ct.), *aff'd*, 156 A.D.3d 452 (2017) ("[T]o some, truth itself has been lost in the cacophony of online and Twitter verbiage to such a degree that it seems to roll off the national consciousness like water off a duck's back.");

• evidence that any person who responded to one of the memes was not a registered voter and may therefore have been unfamiliar with the formalities attendant voting [*see Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021) ("every voting rule imposes a burden of some sort. Voting takes time and, for almost everyone, some travel, even if only to a nearby mailbox. Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules.")];

• evidence that any person who responded to one of the memes was registered to vote and voted in the Presidential Election of 2016 or did not vote for reasons other than reliance on the meme;

• evidence of registered voters in this District who saw but did not respond to either of the memes described in the Complaint; and

• any other evidence supporting Mr. Mackey's prospective defense that no registered voter in this District or elsewhere could reasonably have relied on either of the memes described in the Complaint.

Precisely because Mr. Mackey is not privy to the government's file, this list does not purport to itemize every type of favorable material in the government's possession which the government is obliged to disclose. It attempts to identify some types of material which Agent Rees or another government agent might have obtained in their investigation and which should have long ago been disclosed.

B.      *The Court Should Not Require Jurors to be Vaccinated*

This Court and a judge of the Western District of New York have rejected challenges to mandatory vaccinated juries. *See United States v. Elias*, 579 F. Supp. 3d 374 (E.D.N.Y. 2022); *United States v. Moses*, 566 F. Supp. 3d 217, (W.D.N.Y. 2021). The subsequent nationwide relaxation of COVID restrictions and the particular circumstances of this case warrant a second look at the issue.

5

This Court's opinion was written in the context of the "ongoing surge in Delta and Omicron transmission" and frequent COVID-related lockdowns at the Metropolitan Detention Center. *Elias,* 579 F. Supp. 3d at 377-78. The risks posed by COVID are different today. President Biden has since declared that the pandemic is over;[1] Governor Hochul deemed it unnecessary to renew emergency powers addressing the pandemic;[2] this District ended requirements of social distancing;[3] New York City ended its vaccine mandate for privately owned businesses in November 2022,[4] and the military lifted its vaccine mandate on January 10, 2023.[5] Any potential juror who feels at significant risk in today's changed landscape would be unable to engage readily in tasks of daily life more mundane than jury service.

As the record of this case establishes, the government's charge against Mr. Mackey is based on what has been described as online "disinformation" or "misinformation." *See, e.g.,* Docket 54 (Court's Memorandum Denying Motion to Dismiss) at 9. Proper governmental response to such online information is a matter of robust political debate frequently tied specifically to the efficacy of COVID vaccinations. For example, Senator Amy Klobuchar has spearheaded congressional efforts to curb online misinformation. As the government noted at oral argument of Mr. Mackey's motion to dismiss the indictment, she made specific reference to an alleged meme in this case when addressing election-related

---

[1] *See* https://www.politico.com/news/2022/09/19/biden-pandemic-over-COVID-team-response-00057649

[2] *See* https://gothamist.com/news/ny-gov-Kathy-Hochul-will-let-COVID-emergency-powers-expire

[3] *See* http://img.nyed.uscourts.gov/files/general-orders/AdminOrder2022-22.pdf

[4] *See* https://portal.311.nyc.gov/article/?kanumber=KA-03448

[5] *See* https://media.defense.gov/2023/Jan/10/2003143118/-1/-1/1/SECRETARY-OF-DEFENSE-MEMO-ON-RESCISSION-OF-CORONAVIRUS-DISEASE-2019-VACCINATION-REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES.PDF

misinformation [*see* Docket No. 47 (Transcript of May 6, 2002) at 16 ("one of Mr. Mackey's tweets was on a big poster board in a 2017 senate committee")[6]] and thereafter sponsored the Health Misinformation Act of 2021 [S.2448 - 117th Congress (2021-2022)] to counter online misinformation about COVID vaccines. *See* Press Release of Senator Amy Klobuchar, July 22, 2021.[7] At about the same time, President Biden accused social networks of "killing people" by permitting disinformation about COVID vaccines. *"'They're Killing People': Biden Denounces Social Media for Virus Disinformation,"* New York Times, July 16, 2021.[8]

Studies have shown that public acceptance of pronouncements about vaccines significantly breaks down along party and religious affiliation and classifications including race and socioeconomic status. One study concluded that the "biggest demographic differences were found for race and political affiliation, with Black respondents and Republicans reporting significantly higher vaccine hesitancy than White respondents and Democrats." L.Y. Dhanani and B. Franz, *"A meta-analysis of COVID-19 vaccine attitudes and demographic characteristics in the United States,"* Public Health 207 (2022) 31-38.[9] According to Gallup, 92% of Democrats, but only 56% of Republicans nationwide had been vaccinated as of September 2021.[10]

Regarding race and religious affiliation, white evangelical Christians are known

---

[6] *See* https://www.c-span.org/video/?c4689653/user-clip-vote-text-tweet

[7] *See* https://www.klobuchar.senate.gov/public/index.cfm/2021/7/klobuchar-luj-introduce-legislation-to-hold-digital-platforms-accountable-for-vaccine-and-other-health-related-misinformation

[8] *See* https://www.nytimes.com/2021/07/16/us/politics/biden-facebook-social-media-covid.html

[9] *See* https://www.sciencedirect.com/science/article/pii/S0033350622000877

[10] *See* https://news.gallup.com/poll/355073/vaccinated-delta-surge-fda-decision.aspx

to be a group with "the highest proportion" of unvaccinated members "among any religious group surveyed," "with polls suggesting . . . between 30% and 40% [having] refused to get vaccinated." Joanne Silberner, "*Pushback to Covid-19 vaccines stubbornly high among white evangelicals*," STAT, Jan. 7, 2022.[11] Media reports have also indicated that many ultra-Orthodox Jews remain unvaccinated. Tia Goldenberg, *"Hard-hit by COVID, Israel's ultra-Orthodox slow to get shots*," AP News, Dec. 28, 2021.[12] A categorical exclusion of unvaccinated people from the jury would disproportionately bar members of these religious faiths.

    Even though juries balanced to perfection are not constitutionally required [*see Lockhart v. McCree*, 476 U.S. 162, 178 (1986)], vaccinations and the alleged online disinformation that is the subject of this case are inextricably intertwined, counseling against any post-pandemic requirement that jurors for this case be vaccinated.

C.   The Court Should Preclude the Government's Use
    of Protected Speech Preceding September 2016

    Assuming that the government's theory of Mr. Mackey's criminal liability justifies the government's use of Mr. Mackey's speech against him, the government should be required to follow the wisdom of the proposed Deceptive Practices and Voter Intimidation Prevention Act (S. 1975, 109th Congress, First Session) - - *and the government's own Complaint* [*see* Exhibit A at 1, 3] - - and limit its use of Mr. Mackey's speech to the sixty days preceding the Presidential Election of 2016.

    As discussed more fully in Mr. Mackey's motion to dismiss the indictment,

---

[11] See https://www.statnews.com/2022/01/07/covid19-vaccines-evangelicals-hesitancy/

[12] See https://apnews.com/article/coronavirus-pandemic-health-middle-east-religion-israel-557e9d18f3f78f4fc141eeddaaefb8eb

8

the proposed legislation would make it a crime for any person, *within 60 days before a presidential election*, to communicate or cause to be communicated information about the time, place, or manner of a presidential election if such person acts with "intent to prevent another person from exercising the right to vote or from voting for the candidate of such other person's choice" in a presidential election. *See e.g.* S. 453, Report No. 110-191 (Oct. 4, 2007) at 19 (emphasis added). *See* Docket No. 31-3.

The government's Complaint echoes the proposed legislation, limiting the scope of the charged conspiracy to the 60 days before the Presidential Election of 2016. *See* Exhibit A at 1, 3. Assuming that this prosecution passes constitutional muster, this temporal cabining of the alleged conduct attempts the type of narrow tailoring of governmental restriction on exercise of a fundamental constitutional right to a compelling governmental interest. *See, e.g.*, *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004). If the government intends to use any speech predating September 8, 2016 (60 days before Election Day in 2016), it should be required to say so before trial so that any resulting objection can be efficiently raised and resolved.

D.  *The Court Should Preclude Evidence that Fails to Satisfy the Requirements of F. R. Evid. 801(d)(2)(E)*

The Complaint cites multiple chats of participants in chat rooms on the Internet for which Mr. Mackey was not present. Mr. Mackey had no direct or indirect contact with any of the participants outside of the chat rooms, which were neither created nor hosted by Mr. Mackey. The government presumably will seek to admit these chats (and perhaps others) as vicarious admissions under F. R. Evid. 801(d)(2)(E), which permits evidence of "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Use of Rule 801(d)(2)(E) to admit chats from chat rooms on the Internet under these circumstances extends

9

the rule beyond its intended scope, is otherwise inapplicable, and runs afoul of Rules 401 and 403.

An example of chats for which Mr. Mackey did not participate is provided in the Complaint at paragraph 22, which alleges as follows:

> On or about October 5, 2016, Twitter suspended MACKEY Account 1 for "targeted abuse." Although MACKEY could no longer use MACKEY Account 1 to access the Madman Group, the members of the group, including Co-Conspirator 1, Co-Conspirator 4 and others, continued to formulate, circulate and discuss the Deceptive Images:
>
> a. On or about October 16, 2016, Co-Conspirator 4 posted a Deceptive Image to the Madman Group. The Deceptive Image posted by Co-Conspirator 4 included a photo of the Candidate with the following text: "Your vote matters. And now, it's easier than ever to cast your vote. Simply post [Candidate name with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016. Together we can defeat [Candidate 2] and elect [Candidate]."
>
> b. Within minutes, members of the Madman Group discussed ways to make the Deceptive Image more effective. One member of the group responded, "Don't post it yet though, a week or less before the election. I'm making a version myself." Co-conspirator 4 responded, "make sure to use the latest color schemes they have." Another member responded, "I would get rid of the \"and elect [Candidate]\" part at the bottom though. Together we can defeat [Candidate 2] is more assertive." That same day, Co-Conspirator 1 stated, "[Twitter user] u need to make a text message version of that too," to which Co-Conspirator 4 responded, "[Co-Conspirator 1] hold on."
>
> c. Approximately 12 minutes later, Co-Conspirator 4 posted three additional Deceptive Images to the Madman Group. Each of these Deceptive Images depicted images of the Candidate and included the line: "Simply post [#Candidate with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016."
>
> d. Based on my training, experience and the investigation to date, I believe that the concerns expressed by the co-conspirators and others regarding the timing and appearance of the Deceptive Images indicate that they intended that the Deceptive Images would be used to deceive their targets, and thus sought to make the Deceptive Images appear as authentic as possible.
>
> e. On or about October 17, 2016, Co-Conspirator 4 sent another Deceptive Image to

10

>	the Madman Group.  The Deceptive Image featured a photograph of the Candidate and the following text: "We are proud to announce a new partnership between Facebook and Twitter, and the United States State Department.  Now, you won't even have to leave your bedroom in order to vote.  Simply post [Candidate name with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016."
>
>	f.  On or about October 20, 2016, Co-Conspirator 4 sent another Deceptive Image to the Madman Group.  The Deceptive Image featured a silhouette of a map of the United States and the following text: "Voting just became easier.  Post [Candidate name with Vice President Candidate] on your Facebook or Twitter account on November 8th, 2016 to cast your vote.  That's it."
>
>	g.  On or about October 28, 2016, Co-Conspirator 4 posted another copy of a Deceptive Image and the word "heh."  Three minutes later, a participant in the Madman Group responded, "Dopey shitlibs will fall for it too."  Seven minutes later, Co-Conspirator 4 posted another Deceptive Image.

Complaint at 16-17.

Statements may be admitted pursuant to Rule 801(d)(2)(E) upon a determination by a preponderance of the evidence independent of the hearsay that the defendant and the declarant participated in the same conspiracy, and that the statements were made in the course of and in furtherance of that conspiracy. *See United States v. Margiotta*, 688 F.2d 108, 136–37 (2d Cir. 1982); *United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985).  The government here has parsed public chat rooms frequented principally by politically like-minded strangers and culled out statements to fit a new theory of criminal conspiracy.  Before the government may be permitted to thread such statements together to warrant admission of chats under Rule 80(d)(2)(E), it must do more than show that people connected only by the Internet share the longstanding political goal of turning out their own voters and discouraging turnout of their preferred candidate's opponent.  Likewise, the government must do more than show that such people share the intent to use the same means to discourage turnout of their preferred candidate's opponent.  Rule 801(d)(2)(E) requires instead that the government first prove that the defendant

11

and the declarant are members of the same criminal conspiracy, and the government must do so independent of the hearsay sought to be admitted.

The government should be required to identify before trial every statement it seeks to admit pursuant to Rule 801(d)(2)(E) so that Mr. Mackey's objections thereto can be efficiently raised and resolved.

E.   *The Court Should Preclude Twitter's Reasons for Suspending Ricky Vaughn's Twitter Account and conclusions of MIT Media Lab About the Account's Popularity*

The Complaint makes reference to Twitter's suspension of Mr. Mackey's alleged Twitter account [*see, e.g.*, Exhibit A at 9, 14] and a conclusion of MIT Media Lab [Exhibit A at 8-9] about the relative popularity of the account. Both the reasons for Twitter's suspension and the conclusion of MIT Media Lab are hearsay and not admissible. In addition, both should be precluded under Rules 401 and 403: the apparent reason for Twitter's suspension of the account -- that the memes described in the Complaint were intended to deceive -- is at the heart of the government's case against Mr. Mackey and is an issue for the jury to resolve. Thus, Twitter's conclusion is irrelevant to the jury's deliberations and unduly prejudicial.

Twitter's conclusions about Mr. Mackey's alleged account are unreliable for additional reasons. In one case in which Twitter banned a prominent account over alleged violations of Twitter's policy on misleading information about COVID, the company later acknowledged that the user's tweets "should not have led his suspension at that time." Kaitlyn Tiffany, *A Prominent Vaccine Skeptic Returns to Twitter*, The Atlantic, Aug. 24, 2022.[13] Similarly, the company banned a user's account for alleged COVID misinformation, while internally acknowledging that only four of the account's five strikes were valid. David Zweig

---

[13]  *See* https://www.theatlantic.com/technology/archive/2022/08/alex-berenson-twitter-ban-lawsuit-covid-misinformation/671219/

(@DavidZweig), Twitter (Dec. 26, 2022, 9:54 AM).[14] Twitter has otherwise made multiple mistakes in applying its policies, which journalists have reported through coverage of Twitter files released after Elon Musk acquired the company. *See, e.g.,* Shannon Bond, *"Elon Musk is using the Twitter Files to discredit foes and push conspiracy theories,"* NPR, Dec. 14, 2022.[15] ("They show Twitter executives and rank and file employees grappling with difficult tradeoffs, questioning the company's rules and how they should be applied - - and *in some cases, getting things wrong.*" (emphasis added)). Twitter's application of its rules is unreliable and is irrelevant and unduly prejudicial in this case and should not be admitted in any form.

MIT Media Lab's conclusion about RIcky Vaughn's popularity is likewise irrelevant to the jury's consideration of the charged conspiracy and unduly prejudicial with no or little probative value.

F.  *Even if the Congressmen Described in the Complaint is Relevant, the Court Should Preclude Evidence of His Identity*

To establish that the fictional Ricky Vaughn in a MAGA cap was Mr. Mackey's Twitter avatar, the Complaint makes reference to an unnamed congressional candidate who named Mr. Mackey as Vaughn. *See* Exhibit A at 5-6. Whether or not Mr. Mackey puts his identity in issue at trial, the identity of the congressional candidate is irrelevant unless the government plans to call him as witness to establish that Mr. Mackey is Vaughn. Otherwise, the identity of the congressional candidate should be precluded.

G.  *The Court Should Preclude Inflammatory Language*

The Complaint alleges that Mr. Mackey tweeted the following before the

---

[14]  *See* https://twitter.com/davidzweig/status/1607389285342384129.
[15]  *See* https://www.npr.org/2022/12/14/1142666067/elon-musk-is-using-the-twitter-files-to-discredit-foes-and-push-conspiracy-theor

Presidential Election of 2016:  "Obviously, we can win Pennsylvania.  The key is to drive up turnout with non-college whites, and limit black turnout."  Exhibit A at 21.  The Court "has wide discretion in excluding evidence which is relevant but which may tend to confuse issues or inflame jury." *United States. v. Ravich*, 421 F.2d 1196 (2d Cir. 1970).  Here, the risk of inflaming and confusing can be addressed without compromising relevance if changed to read as follows:  "Obviously, we can win Pennsylvania.  The key is to drive up turnout with Republican voters and limit Democratic turnout."

Dated: January 30, 2023

                                            */s/ Andrew J. Frisch*
                                            Andrew J. Frisch
                                            The Law Offices of Andrew J. Frisch, PLLC
                                            40 Fulton Street, 17th Floor
                                            New York, New York 10038
                                            (212) 285-8000
                                            *afrisch@andrewfrisch.com*

                                            *Attorney for Douglass Mackey*