RCH:FTB/EDP/WJG
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                    Docket No. 21–CR-80 (NGG)

DOUGLASS MACKEY,
   also known as "Ricky Vaughn,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

COREY R. AMUNDSON
Chief
Criminal Division, Public Integrity Section
1301 New York Ave. NW, Tenth Floor
Washington, D.C. 20004

Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
   (Of Counsel)

William J. Gullotta
Trial Attorney
   (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................................. 1

I. THE GOVERNMENT HAS COMPLIED WITH ITS OBLIGATIONS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 5(F) ...................................................... 2

II. THE DEFENDANT'S MOTION TO ALLOW UNVACCINATED JURORS TO BE ELIGIBLE FOR EMPANELMENT IS MOOT ............................................................... 3

III. THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE ALL RELEVANT STATEMENTS OF THE DEFENDANT, INCLUDING THOSE MADE MORE THAN 60 DAYS PRIOR TO THE NOVEMBER 2016 PRESIDENTIAL ELECTION ................................................................................................................... 3

IV. STATEMENTS MADE IN CERTAIN TWITTER DIRECT-MESSAGE GROUPS, ONE-ON-ONE DIRECT MESSAGES, AND TWEETS ARE ADMISSIBLE AS STATEMENTS OF CO-CONSPIRATORS ..................................................................... 5

V. THE COURT SHOULD PERMIT EVIDENCE OF THE SUSPENSIONS BY TWITTER OF THE DEFENDANT'S ACCOUNTS CITED IN THE COMPLAINT ....................... 11

VI. THE COURT SHOULD PERMIT EVIDENCE CONCERNING THE CONCLUSION OF THE MIT MEDIA LAB CITED IN THE COMPLAINT ......................................... 12

VII. THE COURT SHOULD PERMIT THE GOVERNMENT TO IDENTIFY THE CONGRESSIONAL CANDIDATE DESCRIBED IN THE COMPLAINT IF HE TESTIFIES ...................................................................................................................... 15

VIII. THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO PRECLUDE INFLAMMATORY LANGUAGE AT LEAST WITH RESPECT TO THE EXAMPLE CITED BY THE DEFENDANT ...................................................................................... 15

IX. THE GOVERNEMNT MAY SEEK TO PRECLUDE THE DEFENDANT'S PROFFERED EXPERT ................................................................................................... 16

CONCLUSION................................................................................................................... 18

PRELIMINARY STATEMENT

The government respectfully submits this response to the defendant's motions in limine, which were filed on January 30, 2023 (ECF No. 55). In that submission, the defendant moved the Court to (1) direct the government to comply with its obligations under Federal Rule of Criminal Procedure 5(f) and Brady v. Maryland, 373 U.S. 83 (1963); (2) forego the Court's previously stated intention to sit only fully vaccinated jurors in the upcoming trial; (3) preclude the use of statements made by the defendant more than 60 days prior to the date of the 2016 presidential election; (4) preclude the government from introducing as co-conspirator statements certain communications for which a sufficient evidentiary predicate has not been established under Federal Rule of Evidence 801(d)(2)(E); (5) preclude evidence concerning the suspension of the defendant's Twitter account and a contemporaneous media study documenting the defendant's influence on the 2016 presidential election; (6) preclude evidence of the identity of the congressman named in the criminal complaint against the defendant; and (7) preclude what the defendant described as "inflammatory language" in a particular statement of the defendant's. As explained below, intervening events have rendered the defendant's first two motions effectively moot, such that no further action is required by the Court with respect to them. The government respectfully submits that, for the reasons stated in greater detail below, the defendant's other motions should be denied.

In addition, the government is in receipt of the defendant's expert disclosure dated February 15, 2023 (ECF No. 60). The government believes that the disclosure is deficient in several respects under the requirements of newly amended Federal Rule of Criminal Procedure 16(b)(1)(C)(iii). The government has discussed its position with defense

counsel and understands that counsel intends to supplement the disclosure. The government wishes to advise the Court that, depending on the contents of the forthcoming supplemental disclosure, the government may seek to preclude testimony from the defendant's proffered expert on multiple grounds, including lack of relevance.

ARGUMENT

I. THE GOVERNMENT HAS COMPLIED WITH ITS OBLIGATIONS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 5(F)

The defendant moved the Court to direct the government to produce in discovery materials favorable to the defense pursuant to Federal Rule of Criminal Procedure 5(f) and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Specifically, the defendant asked the Court to order the production of certain specific, non-exhaustive categories of reports and other materials that the defendant claimed would tend to be exculpatory under various defense theories. By letter dated February 13, 2023, the government provided certain reports to defense counsel that the government considered generally responsive to the categories described in the defendant's motion. The government disclosed these reports in an abundance of caution and did not (and does not) concede that the reports provided to the defense are materially favorable to the defense or subject to disclosure under Brady or any of the government's other discovery obligations. The government is aware of, has complied with, and will continue to comply with those obligations. As such, the government respectfully submits that this motion be denied as moot. See, e.g., United States v. Underwood, No. 04 CR 424, 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005) ("The government has made a good faith representation to the Court and to defense counsel that it recognizes its disclosure obligations under Brady, that currently no Brady material exists,

2

and that it will comply with its Brady obligations in a timely manner should this material become available. The courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to Brady where the government has made such good faith representations.").

II. THE DEFENDANT'S MOTION TO ALLOW UNVACCINATED JURORS TO BE ELIGIBLE FOR EMPANELMENT IS MOOT

At the pretrial conference on January 19, 2023, the Court advised the parties that its practice during the COVID pandemic had been to permit only fully vaccinated jurors to be empaneled. By minute order dated January 23, 2023, the Court directed the parties to advise the Court by January 30, 2023 whether they had any objection to the requirement of full vaccination for prospective jurors. The defendant in his January 30, 2023 motions in limine objected to the vaccination requirement. By letter dated January 30, 2023, the government advised that it took no position as to whether jurors should be asked about their vaccination status during the voir dire process. On February 1, 2023, the Court issued a minute order indicating that it would not require jurors to be fully vaccinated, although the Court would require that jurors wear masks when in close proximity to other jurors. Accordingly, the defendant's motion for the Court to relax the vaccination requirement for prospective jurors is moot.

III. THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE ALL RELEVANT STATEMENTS OF THE DEFENDANT, INCLUDING THOSE MADE MORE THAN 60 DAYS PRIOR TO THE NOVEMBER 2016 PRESIDENTIAL ELECTION

Relevant statements made by the defendant are admissible as the statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2). There is no requirement of temporal proximity to the crime under the Rule for a statement to qualify for admission into

3

evidence. The defendant nonetheless argues that statements by the defendant made more than 60 days prior to the November 2016 presidential election should be precluded.

The only authority offered by the defendant in support of this position is an unenacted congressional bill that proposes to criminalize, under certain circumstances, the dissemination of information concerning the time, place, and manner of voting, but only if such dissemination occurs within 60 days before a presidential election. The defendant asserts that the 60-day window is required by the First Amendment and is necessary to avoid chilling protected political speech. The defendant further argues that the 60-day period is, in any event, roughly coterminous with the timeframe of the alleged conspiracy in the indictment, which covers September 2016 to November 2016, such that statements outside of this period are presumptively irrelevant anyway.

The defendant's motion should be denied. There is simply no authority (or reason) for the Court to adopt the arbitrary 60-day cutoff put forward by the defendant. To be sure, the government will have to establish that any statements of the defendant that it seeks to admit are both relevant under Federal Rule of Evidence 401 and not unduly prejudicial under Federal Rule of Evidence 403; but, assuming that showing can be made, the Court should not preclude an otherwise admissible statement because it may have been made prior to the start of the charged conspiracy. See United States v. Mostafa, 16 F. Supp. 3d 236, 255-69 (S.D.N.Y. 2014) (admitting, subject to a Rule 404(b) analysis, a number of undated statements made by the defendant as relevant to the question whether the defendant possessed the requisite intent to enter into the charged conspiracies); see also Gov't Mot. in Lim., Jan. 30, 2023, ECF No. 57, at 12-15.

4

To the extent the defendant is invoking the First Amendment, the Court has already ruled that it does not bar the government's charging theory; and the defendant offers no credible explanation as to why, in light of that ruling, the First Amendment should now work to bar evidence offered in support of that theory. See Mem. and Or., January 23, 2023, slip op., ECF No. 54, at 38-55. In addition, courts routinely admit the statements of defendants as evidence of intent, even if the statements are not themselves criminal in nature.[1] See United States v. Kaziu, 559 F. App'x 32, 35 (2d Cir. 2014) ("Here, [the defendant] was not convicted for his speech; rather, his political beliefs were introduced to prove the mens rea element of the charged crimes."). As is addressed in further detail below, the government has provided the defense with statements that it intends to offer at trial in order to permit the defense to make specific objections; but the government respectfully submits that objections based on a particular statement's falling outside of the 60-day window identified by the defense have no merit.

IV.  **STATEMENTS MADE IN CERTAIN TWITTER DIRECT-MESSAGE GROUPS, ONE-ON-ONE DIRECT MESSAGES, AND TWEETS ARE ADMISSIBLE AS STATEMENTS OF CO-CONSPIRATORS**

As the government argued in its own motion in limine, the statements of various persons who participated in certain Twitter direct-message groups are admissible against the defendant as the statements of co-conspirators. See Gov't Mot. in Lim., January

---

[1] The Court noted in its memorandum and order denying the defendant's motion to dismiss that certain statements referenced in the criminal complaint were included as "background and context for the conversational environment in which the Deceptive Tweets were ultimately conspired about and formulated, rather than as acts to be regulated or criminalized in and of themselves." United States v. Mackey, 21-cr-080, Dkt. No. 54, slip op., at 49 n.20 (E.D.N.Y. Jan. 23, 2022).

5

30, 23, ECF No. 57, at 4-5, 16-25. It is certainly true, as the government acknowledged in its own motion in limine, that the government will have to establish at trial the existence of the conspiracy and the defendant's participation in it by a preponderance of the evidence for the statements of the co-conspirators to be admissible under Federal Rule of Evidence 801(d)(2)(E). See id. at 4; see United States v. Kandic, 17-CR-449 (NGG) (RER), 2022 WL 1266431, at *5 (E.D.N.Y. Apr. 28, 2022) (electing to follow the Geaney protocol whereby "statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence establishing that a conspiracy existed, that the defendant and the declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy" (internal quotation marks and citations omitted)). The defendant moves the Court to preclude the co-conspirator statements proffered by the government on the ground that there is insufficient evidence, other than the statements themselves, that a conspiracy existed and that the defendant joined it.

As an initial matter, contrary to the defendant's suggestion, the Court is permitted under the law to consider the statements themselves as probative of the existence of the conspiracy in assessing their admissibility. See, e.g., United States v. Daly, 842 F.2d 1380, 1386 (2d Cir. 1988) ("In making these preliminary factual determinations, the court may take into account the proffered out-of-court statements themselves if those statements are sufficiently reliable in light of independent corroborating evidence.").[2] In this case, the

---

[2] The cases cited by the defendant – United States v. Margiotta, 688 F. 2d 108, 136-37 (2d Cir. 1982) and United States v. Castellano, 610 F. Supp. 1359 (S.D.N.Y. 1985) – were decided prior to the Supreme Court's decision in Bourjaily v. United States, 483 U.S.

government does not anticipate any dispute as to the authenticity of the proffered statements from the identified Twitter direct-message groups, in which the defendant was a participant. In addition, the defendant's own statements, including most significantly his distribution of the deceptive images that are the subject of the indictment, provide sufficient, independently admissible corroboration of the defendant's decision to join the conspiracy and to further its ends. This is especially true, given that the defendant's participation was the subject of explicit discussion by other members of the conspiracy. See, e.g., Gov't Mot. in Limine, Jan. 30, 2023, ECF No. 57, at 19 (citing examples of other co-conspirators' congratulating the defendant on his transmission of the deceptive images); see also United States v. Padilla, 203 F. 3d 156, 162 (2d Cir. 2000) ("Where, as here, the hearsay evidence itself so convincingly implicates the defendant, a district court may require less corroboration to find by a preponderance of the evidence that the defendant participated in the conspiracy for purposes of admitting co-conspirators' statements against him.").

    The defendant suggests that the fact that many of the communications occurred online in Twitter direct-message groups and that the co-conspirators may not have spoken or even met outside of this context somehow undermines the government's proffer of the existence of a conspiracy. As an initial matter, the conspiracy charged in the indictment was effectuated and executed by and through online activity. It is a fact of the times that criminal activity can be accomplished through online means, and the defendant cannot

---

171, 181 (1987), which held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." See also Bourjaily, 483 U.S. at 181 ("We think there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.").

7

seriously suggest that the nature of those activities and communications somehow place the actions of the defendant and his co-conspirators outside the boundaries of the law. See, e.g., United States v. Heatherly, 985 F.3d 254, 262-63 (3d Cir. 2021) (finding sufficient evidence that defendant entered into a conspiracy based on participation in a secure chat room in which "users swapped videos and egged on another on as part of a single, coherent group"). This argument is also in tension with the well-established principle that a defendant need not know all of the members of the conspiracy. See United States v. Harris, 8 F.3d 943, 946 (2d Cir. 1993) ("It is well settled law that an individual need not know the identities of all coconspirators in order to be found guilty of being a member of the conspiracy."). That the defendant may not have known the identities of all of the members of the relevant Twitter direct-message groups or met or interacted with them outside of the online channels through which they communicated should not affect the Court's evaluation of whether the government has demonstrated the conspiracy by a preponderance of the evidence, and the defendant offers no authority to the contrary.

    The defendant also argues that some of the statements identified by the government in the complaint were made outside the presence of the defendant (i.e., during a time when his Twitter account had been suspended) or prior to his dissemination of the deceptive images. As argued in the government's own motion in limine, that the defendant may not have been present when a co-conspirator made a statement in furtherance of the conspiracy does not affect the statement's admissibility as to the defendant. See Gov't Mot. in Limine, Jan. 30, 2023, ECF No. 57, at 7. In addition, even if the proffered statements were made prior to a time when the defendant joined the conspiracy, the fact that the defendant joined the conspiracy renders the statements of his co-conspirators, even those

potentially made before his joining the conspiracy, admissible against him. See United States v. Badalamenti, 794 F.2d 821, 828 (2d Cir. 1986) ("[W]e conclude that statements of [a defendant's] co-conspirators are admissible against him, even if made before he joined the conspiracy."); United States v. Freedman, 18-CR-217 (KMW), 2019 WL 5387866, at *1 (S.D.N.Y. Oct. 22, 2019) ("Statements of earlier-joined conspirators . . . can be admitted against members who joined later.").

   The government has provided the defendant with a list of the statements the government may offer at trial.[3]  The statements selected by the government and provided to the defense in draft form fall into several categories.  First, the defendant's own statements are admissible as statements of a party opponent, pursuant to Federal Rule of Evidence 801(d)(2)(A).  This includes statements of the defendant made in furtherance of the conspiracy, as well as statements made prior to the conspiracy which explain, among other things, the genesis and background of the conspiracy, the relationships of trust between the participants, or the defendant's intent in his commission of later acts. (Gov't Mot. in Limine, Jan. 30, 2023, ECF No. 57, at 10-14).  The draft list of statements also includes the statements of others which are not offered to prove the truth of those statements, but rather to

---

   [3] On February 23, 2023, the government sent the defendant several spreadsheets containing statements from which the government will select its primary exhibits.  The spreadsheets included one document of tweets, two documents of direct message conversations, and seven documents depicting group message conversations.  Within each spreadsheet, each individual message – whether a tweet, direct message or group message – was listed as a separate spreadsheet entry, totaling approximately 2100 discrete messages.  Each message included identifying metadata information and information detailing the location of the message within the discovery materials.

9

provide context for the defendant's own statements and/or because of the effect they had on the listener (namely, the defendant). (Id. at 14-15).

In addition to the statements noted above, the government will offer statements of co-conspirators[4] made during the time period of the conspiracy, beginning on or around September 26, 2016, which the government offers for the truth of the matter asserted. As with the defendant's own statements, the government will offer the statements of others made during this time period not for the truth of those statements, but rather as context for the statements the co-conspirators (and the defendant), or for their effect on listeners as relevant to their intent.

The government expects to review these statements with the defense in the expectation of eliminating and/or narrowing disputes over admissibility. The government expects that the parties will then advise the Court of those materials where the parties could not reach agreement so that the Court may render decision.

---

[4] As was noted in the government's initial motion in limine, the government alleges that individuals who posted, shared, or strategized over how to optimize the deceptive images or the messages therein are co-conspirators, and that the statements of those individuals are admissible as co-conspirator statements. These co-conspirators include the Twitter users identified in the Government's Motion in Limine: @Halleybordercol, @WDFx2EU7, @UnityActivist, @Nia4_Trump, @1080p, @bakedalaska, @jakekass, @jeffytee, @curveme, 794213340545433604 and @Urpochan, the latter of which was described but not specifically identified as a co-conspirator in that submission. The materials provided to defense counsel on September 23, 2023 include statements from the following additional users which are of a similar character and admissible as co-conspirator statements: @WDFx2EU8, @MrCharlieCoker, @Donnyjbismarck, @unspectateur and 2506288844.

V.      THE COURT SHOULD PERMIT EVIDENCE OF THE SUSPENSIONS BY TWITTER OF THE DEFENDANT'S ACCOUNTS CITED IN THE COMPLAINT

The defendant moves to preclude evidence that his Twitter accounts were suspended at various times, as both hearsay and as unduly prejudicial. The government respectfully submits that the evidence is neither. The defendant's own submission appears tacitly to assume that the fact that the defendant's Twitter accounts were suspended on several occasions is relevant and admissible. This conclusion follows from the defense's strong suggestion that it will argue that the suspensions insulated the defendant from certain communications in the Twitter direct-message groups that occurred during the suspension periods, thereby clouding the defendant's understanding of the discussion and arguably neutralizing the government's contention that he disseminated the deceptive images with criminal intent.

The defendant's argument is therefore that, even if the fact that the defendant's account was suspended is admissible, the reasons Twitter gave for the suspensions should be precluded as prejudicial hearsay. The government understands that the first of the defendant's suspensions – prior to the transmission of the deceptive images – was for abusive behavior. Without prejudice to reconsidering its position depending on how the trial develops, the government agrees that the reasons behind this suspension are arguably irrelevant and will agree not to elicit the evidence (though the fact that the defendant was suspended will be part of the record). The government contends that the reasons for the defendant's second suspension from Twitter, which was in direct response to the posting of the deceptive images that are the subject of the indictment, are admissible not for their truth, but rather for their effect on the defendant and his co-conspirators.

11

As outlined in the criminal complaint, the account used by the defendant to transmit the deceptive images was suspended in early November 2016 in direct response to the defendant's posting of the deceptive images themselves.  The defendant (as he had done before) regained access to Twitter via an alternative account after this suspension and made statements regarding the fact of the suspension and his understanding of the reasons for it.  Those statements clearly convey the defendant's understanding that the suspension was based on the conclusion by Twitter that the defendant had spread misinformation concerning the method by which voters could cast votes in the 2016 presidential election.

Under these circumstances, the reason for the suspension – as communicated to, or understood by, the defendant – is relevant to the defendant's state of mind, regardless of whether Twitter correctly interpreted its own internal policies as justifying the suspension.  The suspension and the reason for it were also the subject of comment and discussion by the defendant's co-conspirators, some of whom continued to transmit deceptive images similar to the ones sent by the defendant after the fact of the defendant's suspension became known.  As such, the co-conspirators' statements concerning the suspension should also be admitted into evidence.  The government would not object to an appropriately worded limiting instruction making clear that the reason for the suspension – as understood and discussed by the defendant and his co-conspirators – is not being offered for its truth, but rather as evidence of the defendant's intent and the purpose of the conspiracy.

VI.  THE COURT SHOULD PERMIT EVIDENCE CONCERNING THE CONCLUSION OF THE MIT MEDIA LAB CITED IN THE COMPLAINT

The defendant also moves to preclude evidence that the MIT Media Lab concluded in February 2016 that the defendant was in a position to influence significantly the

upcoming presidential election, arguing that such evidence is hearsay. By way of background, in or around 2015 and 2016, the MIT Media Lab, a research laboratory at the Massachusetts Institute of Technology, obtained access to Twitter's daily output – the nearly 500 million tweet per day "fire hose" – as well as Twitter's archive. Using these materials, the MIT Media Lab launched the "Electome Project," which provided analysis of public Twitter conversations about the 2016 election. The Electome Project published portions of its analysis and conclusions either directly on the website Medium.com or in conjunction with various media outlets, like the Washington Post.

On or about February 23, 2016, the MIT Media Lab published an article on Medium.com describing some of its findings. In an article titled "Who's Influencing Election 2016?" written by William Powers, the MIT Media Lab published an analysis of the "top 150 [election] influencers" who "loom large at the intersection of news and social media." See Who's Influencing the Election, available at https://medium.com/@socialmachines/who-s-influencing-election-2016-8bed68ddecc3 (hereinafter, "the Medium.com Article"). As was noted in the Medium.com Article, the defendant's Twitter handle, @Ricky_Vaughn99, was determined to be the 107th most influential Twitter account analyzed in the project.

The defendant learned about his ranking and referenced it repeatedly. He discussed it in private message groups ("Holy shit, I'm 107. That's unreal" / "MIT-CERTIFIED BEST POASTER. Shit, I should put that in my bio"), in one-on-one conversations ("Wow, that is crazy, I love it." / "That's huge. We both made the list, congrats."), and tweeted it to his tens of thousands of followers, among others ("Yes. Number 107. / "To be fair, I am higher ranked than the Democratic Party's official

13

<307>

shitposting account, according to MIT."). The defendant even added it to his twitter bio, such that the phrase "Deplorable MIT-certified Top 150 2016 Election Influencer" was visible to anyone who visited his Twitter homepage during certain periods of time. Further, the defendant advertised not only his ranking, but the Media Lab's written publications – referenced above – that detailed the entire project, the methodology behind the project and full rankings published by the project ("*MIT Certified [linking to the Medium.com Article referenced above]").

Given the above, and given that the defendant is charged with conspiring to distribute misinformation about the manner in which voters in the 2016 election could cast their votes, the defendant's awareness of his outsized influence is highly relevant to the jury's determination of the defendant's intent in committing the charged crime. Specifically, such evidence shows that the defendant believed that he had significant ability to push messages on Twitter and that the defendant and his co-conspirators were aware of that ability. The defendant's own statements about the MIT Media Lab's findings are therefore admissible as non-hearsay under Federal Rule of Evidence 801(d)(2)(A). To the extent that the government understands the defendant's in limine motion to be challenging the propriety of the defendant's inclusion on this list in the first instance (i.e., whether the MIT Media Lab correctly assessed the defendant's level of influence), the government has given notice that it can, if necessary, call a member of the Media Lab's team to testify about the project's findings should the defendant's own admissions about the project be deemed insufficient.

14

VII. THE COURT SHOULD PERMIT THE GOVERNMENT TO IDENTIFY THE CONGRESSIONAL CANDIDATE DESCRIBED IN THE COMPLAINT IF HE TESTIFIES

The defendant moves to preclude the government from naming the congressional candidate described in the complaint unless the government calls that candidate as a witness to testify at the trial. As it stands, it is difficult to foresee a scenario in which the government does not call the candidate as a witness, but nonetheless seeks to introduce evidence of the candidate's identity. As such, the government respectfully requests that the Court deny the defendant's motion without prejudice to the defendant's ability to renew it should the unlikely scenario contemplated in the motion come to pass.

VIII. THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO PRECLUDE INFLAMMATORY LANGUAGE AT LEAST WITH RESPECT TO THE EXAMPLE CITED BY THE DEFENDANT

The defendant moves to preclude as overly inflammatory the introduction into evidence of at least one of his statements made prior to the 2016 presidential election. The specific statement is: "Obviously, we can win Pennsylvania. The key is to drive up turnout with non-college whites, and limit black turnout." This statement is squarely relevant to the defendant's intent since it showcases the defendant's contemporaneous belief that limiting the "turnout" of African-American voters was key to the victory of his preferred candidate. The jury could fairly conclude that this belief was the motive for the dissemination of the deceptive images, one of which features the picture of an African-American woman (the other features an image of a Hispanic woman with text written in Spanish). In addition to evidence of motive, the statement tends to negate any inference that the defendant sent the

15

deceptive image in jest or without the intent truly to deceive any voters.[5] The government respectfully submits that the language of the statement is simply not prejudicial enough to warrant either preclusion or sanitizing, as the defendant proposed in his motion, given its clear relevance to the defendant's intent.

IX. THE GOVERNEMNT MAY SEEK TO PRECLUDE THE DEFENDANT'S PROFFERED EXPERT

The defendant's expert disclosure (ECF No. 60) advises that the defense may seek to call at trial Professor George Hawley to testify concerning "online media strategies of conservatives," and, in particular that such strategies can include the use of social media to "provoke ideological opponents, exploit natural fissures in opposition coalitions, and create apparent controversies to generate coverage by mainstream journalists." (Def. Exp. Disc. at 1). Beyond that, there is no additional information in the disclosure that would constitute "a complete statement of all opinions that the defendant will elicit from the witness" and the

---

[5] Although the defendant need not proffer his defense at this juncture, he has signaled in his various submissions that he intends to argue that his actions were done in satire, and/or that he could not have realistically believed that anyone would fall for such satire. Should the defendant defend the case in such a manner, the government submits that numerous statements of the defendant would be highly relevant and admissible. For example, in or around January 2016, the defendant stated in a private direct message that "Andrew Anglin exposed how gullible black people are / Black people literally believed that the KKK was marching on Mizzou. Most gullible people ever." Should the defendant suggest that he didn't believe that anyone would fall for the Deceptive Image – the first of which featured an African American woman – the government should be permitted to demonstrate the defendant's intent by admitting the defendant's claim that African Americans are particularly gullible. While such a statement is plainly prejudicial, it is not unfairly prejudicial should the defendant suggest that his actions should be interpreted as a joke. Fed. R. Evid. 403 (noting that relevant evidence should be admitted unless it is substantially outweighed by unfair prejudice, among other reasons). The government included such statements in the draft exhibits that it provided to the defendant on February 23, 2023.

16

"bases and reasons for them," as required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii).

As noted above, the government's position is that the disclosure does not comply with the requirements of Rule 16 (as recently amended) in that, among other things, it does not set forth the specific opinions that Professor Hawley is expected to offer at trial and the bases for them. As it stands, the relevance of Professor Hawley's anticipated testimony is not clear to the government. The government has discussed its concerns with the defendant's disclosure with defense counsel and understands that a supplemental disclosure is forthcoming. The government respectfully advises the Court that, depending on the contents of the supplemental disclosure, the government may seek to preclude Professor Hawley's testimony on multiple grounds, including the lack of relevance to any issue expected to be in dispute.

CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny those motions in limine of the defendant that have not been rendered moot by intervening events.

Dated:   Brooklyn, New York
         February 24, 2023

                              Respectfully submitted,

                              BREON PEACE
                              UNITED STATES ATTORNEY
                              Eastern District of New York

                              COREY R. AMUNDSON
                              Chief
                              Criminal Division, Public Integrity Section

By:    /s/
       Erik D. Paulsen
       F. Turner Buford
       Assistant United States Attorneys
       (718) 254-7000

       William J. Gullotta
       Trial Attorney
       (202) 514-0047

cc:   Clerk of the Court (NGG)
      Andrew J. Frisch, Esq. (by E-Mail and ECF)