RCH:FTB/EDP/WJG
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                      Docket No. 21–CR-80 (NGG)

DOUGLASS MACKEY,
   also known as "Ricky Vaughn,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM OF LAW IN REPLY TO THE DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

COREY R. AMUNDSON
Chief
Criminal Division, Public Integrity Section
1301 New York Ave. NW, Tenth Floor
Washington, D.C. 20004

Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
    (Of Counsel)

William J. Gullotta
Trial Attorney
    (Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

    A.  Statements Concerning Identity ................................................................................ 2

    B.  Statements Concerning the Defendant's Commission of the Stated Offense ............... 3

    C.  Statements Evincing Coordinated Use of Social Media ............................................. 3

    D.  Statements Concerning the Defendant's Reach and Influence on Social Media .......... 5

    E.  Statements Concerning the Defendant's Plans and Leadership .................................. 5

    F.  Statements Concerning the Defendant's Political Viewpoint ...................................... 6

        1.  Statements Concerning Turnout during the Election ............................................ 6

        2.  Statements Concerning the Closeness of the Election ........................................... 7

        3.  Statements Concerning Satire and Politics ............................................................. 7

    G.  Statements Concerning the Credulity of Certain Groups of People ............................ 7

CONCLUSION ........................................................................................................................... 9

## PRELIMINARY STATEMENT

The government respectfully submits this reply to the defendant's February 24, 2023 response to the government's motion in limine, (ECF No. 57). In his response, the defendant articulated his grounds for opposing the admission of various statements of the defendant. As was noted in the government's original motion, the majority of the statements that the government will move to admit consist of statements related to the charged conspiracy, including statements by those identified as co-conspirators and statements that give context to both the actions and statements of the defendant and his co-conspirators. The government writes in reply to provide further clarification concerning the relevance of the other identified categories of statements—referenced in Section II.A.2.a of the Government's motion in limine (pgs. 10-15)—that will be offered by the government on the issues expected to be in dispute at trial.

## ARGUMENT

On or about February 23, 2023, the government provided the defendant with several spreadsheets containing statements that the government may seek to introduce as trial exhibits. The spreadsheets included tweets, direct message conversations, and group message conversations. Each individual message within the spreadsheets – whether a tweet, direct message or group message – was listed as a separate spreadsheet entry and included metadata information pointing to the location of the message within the discovery materials provided at the onset of the prosecution.

As is discussed in both the government's motion in limine and the government's response to the defendant's motion in limine, the provided materials are admissible in that they consist of statements of the defendant, statements of co-conspirators,

and responses that contextualize and inform those statements. They are relevant for numerous purposes, including but not limited to their tendency to demonstrate the intent of the defendant, the identity of the defendant, and the background of the conspiracy that later developed.

What follows is a more granular categorization of the materials described in the Government's motion in limine that the government seeks to admit.[1] Should the parties fail to agree on significant portions of these materials, the government respectfully requests that the Court schedule a conference so that the admissibility of these materials may be adjudicated in a manner convenient to the Court and prior to the scheduled jury trial.

A.  Statements Concerning Identity

The government submits that the defendant's statements which serve to identify Douglass Mackey as the user of relevant Twitter accounts are relevant and admissible. These statements include statements concerning the defendant's age, his place of origin, his place of residence, his email account, his Facebook account, where he went to college and sports he played in college, among other topics. Similarly, the government submits that statements in which the defendant expresses his intent and strategies to keep his identity and computer activity secret, such as his intention to use the Twitter accounts of others if he were banned or his use of Virtual Private Networks (VPNs), are similarly relevant in proving the defendant's intent. The government further submits that these statements remain relevant even if the defendant elects not to contest his identity as Ricky

---

[1] The government will not restate its positions concerning the co-conspirator statements—and context for those statements—which were addressed in detail in the government's motion in limine.

2

Vaughn, as the statements demonstrate the defendant's commitment to concealing his identity and the means by which he did so throughout the relevant time period.  <u>United States v. Basciano</u>, No. 05-CR-060 (NGG), 2011 WL 114867, at *4 (E.D.N.Y. Jan. 12, 2011) (noting that "a criminal defendant may not use stipulations or offers not to contest in order to deprive the Government of 'the full evidentiary force of [its] case,' and the Government must be permitted to tell 'a colorful story with descriptive richness'" (citing <u>Old Chief v. United States</u>, 519 U.S. 172, 186-87 (1997)) (reconsidered for other issues).

  B. <u>Statements Concerning the Defendant's Commission of the Stated Offense</u>

Following his distribution of the false voting memes described in the Complaint (the "Deceptive Images"), the defendant obtained a new Twitter account (@ReturnofRV) and commented expressly about what he had done.  In addition to acknowledging why he had been suspended from Twitter ("the second time it was because I posted a meme that told Hillary supporters they could text to vote. Lol."), the defendant sent screenshots of CNN's coverage of his actions to both his Twitter followers and to the direct message groups he had recently rejoined.  The members of the direct message groups, including co-conspirators, then commented on, and celebrated, his actions.  The government submits that these statements are relevant both to show the defendant's acknowledgement that he was responsible for his actions, but also to show the coordinated nature of his activities.

  C. <u>Statements Evincing Coordinated Use of Social Media</u>

The government submits that the defendant's myriad historical statements evincing and describing the coordinated use of social media, including with future co-conspirators, are relevant both as background for the conspiracy and for evidence of the

methods and operations of the conspiracy.  Relevant statements include tweets by the defendants and others, including co-conspirators, in which the defendant and his correspondents discussed the timing and sequencing of tweets, retweets of social media activity (such as the "Draft Our Daughters" memes discussed in the Complaint) or the coordinated use of other communication services (such as Slack) by co-conspirators.  In addition, the government submits that coordinated re-tweeting by the defendant and co-conspirators of each other's materials is generally relevant toward demonstrating the relationships among the co-conspirators.

Further, the defendant's more general statements concerning how to best leverage the use of social media for maximal effect, are also admissible as to his methods and operations and general state of mind.  Such statements include, but are not limited to, the following:

- "We can hijack hashtags with memes" (DM, Jan 26, 2016)
- "It should be done as a coordinated effort.  With the goal of trending." (DM, May 9, 2016)
- "Please help me trend #InTrumpsAmerica.  New hashtag starting now" (DM, May 12, 2016)
- "Repetition is key…. Repeat it again and again.  I just tweeted it.  Memes would also be good." (DM, June 22, 2016)
- "Please contribute a tweet to #KaineAndUnable2016, maybe we can trend it." (DM, July 23, 2016)
- "I would say use fewer hashtags, maybe only use one hashtag, and a simple, short message.  Other than that, you're doing everything right.  I will keep retweeting you." (DM, Oct 5, 2016)
- "We're going to need serious memetics to derail the coming mainstream narrative...get on it, folks" (Tweet, June 6, 2016)
- "I am looking for roughly half a dozen photoshop experts who wish to join a team, please respond to this tweet with why you are qualified." (Tweet, July 1, 2016)

4

D. <u>Statements Concerning the Defendant's Reach and Influence on Social Media</u>

The government submits that statements by the defendant in which he describes the activity of his audience on Twitter, including his descriptions of his ranking on an MIT list of top social media influencers (as discussed in motion in limine), are relevant toward the defendant's intent. ("It's true, I am a troll, I've been one of the most influential pro-Trump trolls of the election cycle." (DM May 16, 2016); "NATIONAL LEADERS COMMENCE HIGH-LEVEL TALKS, PANIC AS VAUGHN HITS 30,000 FOLLOWERS" (Tweet, May 12, 2016)). Further, statements in which the defendant describes lending his influence to boost the messaging of others, are also relevant to the manner in which he used social media ("Going to try to boost your followers" (DM, Aug 9, 2016))

E. <u>Statements Concerning the Defendant's Plans and Leadership</u>

The government submits that the defendant's statements concerning his perception of himself as a leader among his Twitter followers and associates are relevant for many purposes, including to demonstrate the defendant's intent and his coordinated actions, as well as his role relative to others in the conspiracy. These statements include, but are not limited to, the following:

- "I have the personality and the ability to convince people now" (DM, Nov. 23, 2015)
- "This identity is very powerful. I have something great going on." (DM, Jan 7, 2016)
- "I am going to start preparing myself mentally, spiritually, and physically, to be a leader. . . . I never asked or wanted to be a leader, but so many people are asking it of me, so I feel a responsibility" (DM Jan 11, 2016)
- "I have like the most loyal army on twitter. I can get anything I want photoshopped in one hour. I have people offering to do web design for me. My Twitter account is just exploding" (DM Jan 28, 2016)
- "It's like at any one time there is an army of 100 of my followers ready to swarm." (DM, Aug. 1, 2016)

Similarly, statements of others about the defendant, in which co-conspirators and others express admiration for the defendant, lament his suspensions or celebrate his return, are similarly relevant as background for the conspiracy and context for those relationships and his status within those relationships.

F. <u>Statements Concerning the Defendant's Political Viewpoint</u>

The defendant's partisan political opinions are relevant in this trial insofar as they inform whether the defendant's distribution of the Deceptive Images was, among other things, intended to divert voters and not conveyed as a joke. The defendant's statements supporting his partisan positions number in the tens (if not hundreds) of thousands. The government anticipates introducing a fraction of these statements that are directly relevant to the defendant's motive and intent, as detailed below. The government will avoid unduly inflammatory statements and does not expect to belabor the statements it does seek to introduce but submits that the Rule 403 balancing test bends squarely in favor of admission – especially given the anticipated defense that the defendant's posting of the Deceptive Images was not a bona fide attempt to trick voters.

1. <u>Statements Concerning Turnout during the Election</u>

On numerous occasions, the defendant expressed opinions suggesting that limiting or depressing turnout would be a dispositive factor in the election. Such sentiments, including the following, are relevant as evidence of motive given the defendant's subsequent distribution of the Deceptive Images.

- "Hillary's team is in a panic because black voter turnout in Ohio and Florida primaries was down 40 percent." (Tweet, Mar 19, 2016)
- "All of these polls assume the electorate will be 52 or 53 percent female, while all data indicates female turnout will be lackluster." (Tweet, July 25, 2016)

6

- "One way to depress turnout is to use meme magic to make not voting for Hillary a cool way for young POCs and progressives to 'protest.'" (Tweet, July 29, 2016)
- "A 25 year old latino progressive will probably never vote for Trump, but we can depress her enough to stay home, or vote for Jill or Gary." (Tweet, July 29, 2016)
- "Very few persuadable voters remain. A lot of what we are doing is just keeping our own team fired up, and trying to demoralize other team." (Tweet, July 31, 2016)
- "Obviously, we can win Pennsylvania. The key is to drive up turnout with non-college whites, and limit black turnout." (Tweet, Nov 2, 2016)

    2.    <u>Statements Concerning the Closeness of the Election</u>

The defendant also commented extensively on the closeness of the election suggesting that it would come down to the wire. The defendant's subjective belief bears relevance to a scheme to disenfranchise voters, particularly if such a scheme may have only had modest effect. Statements in this vein include the following:

- "it's a close race. consider it a tie, overall" (Tweet, Sept 4, 2016)
- "I'm thinking it's going to be a nailbiter" (DM, Oct 31, 2016)
- "The election stands on a knife's edge, don't let anyone tell you otherwise." (Tweet, Nov 7, 2016)

    3.    <u>Statements Concerning Satire and Politics</u>

Further, should the defendant argue that his comments were done in jest, the defendant's broad statements about satire and politics should be admissible. ("The way in which the Right wing mixes satire with sincerity is very disorienting to outsiders. This is a good thing." (Tweet, Aug 7, 2015)).

    G.    <u>Statements Concerning the Credulity of Certain Groups of People</u>

Finally, as the government noted in footnote 4 to its response to the defendant's motion <u>in limine</u>, should the defendant suggest that he didn't believe that anyone would fall for the Deceptive Images – the first of which featured an African American

7

woman and suggested that certain voters should vote by text – the government should be permitted to demonstrate the defendant's intent by admitting the defendant's negative opinions about the credulity of African-Americans. ("Andrew Anglin exposed how gullible black people are / Black people literally believed that the KKK was marching on Mizzou. Most gullible people ever." (DM, Jan 16, 2016)).  Such statements, while inflammatory, become directly relevant if the defendant suggests he was not attempting to trick a group of people that he himself described as easily fooled.  See also ("It's a fool's errand to babble on complaining about 'low information voters.'  Either stay out of mass politics or play the game."  (Tweet, Apr. 10, 2016)).

CONCLUSION

For the reasons stated above, the government respectfully requests that the Court grant the motions in limine of the government.

Dated: Brooklyn, New York
February 28, 2023

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York

COREY R. AMUNDSON
Chief
Criminal Division, Public Integrity Section

By:    /s/
Erik D. Paulsen
F. Turner Buford
Assistant United States Attorneys
(718) 254-7000

William J. Gullotta
Trial Attorney
(202) 514-0047

cc: Clerk of the Court (NGG)
    Andrew J. Frisch, Esq. (by E-Mail and ECF)