RCH:FTB/EDP/WJG
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

DOUGLASS MACKEY,
   also known as "Ricky Vaughn,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No.  21–CR-80 (NGG)

**Filed Under Seal**

### GOVERNMENT'S MEMORANDUM OF LAW IN REPLY TO THE DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR CERTAIN PROTECTIVE MEASURES CONCERNING THE TESTIMONY OF A COOPERATING WITNESS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

COREY R. AMUNDSON
Chief
Criminal Division, Public Integrity Section
1301 New York Ave. NW, Tenth Floor
Washington, D.C.  20004

Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
   (Of Counsel)

William J. Gullotta
Trial Attorney
   (Of Counsel)

1

PRELIMINARY STATEMENT

The government respectfully submits this reply to the defendant's March 2, 2023 opposition to the government's motion for certain protective measures concerning the anticipated trial testimony of a cooperating witness (the "CW"). The defendant argues that the requested protective measures are unnecessary because the evidence supporting the risk to the CW is, in the defendant's estimation, speculative and, in any event, the requested protections are likely to prejudice unfairly the defendant's trial rights. Contrary to the defendant's arguments, the risks to the CW are clear and present – especially in light of the fact that the CW is actively working with federal agents on other ongoing investigations. In addition, the requested measures will in no way impair the defendant's ability to prepare for trial or effectively cross-examine the CW. For these reasons, the government respectfully requests that the Court grant its motion.

I.  The CW's Anticipated Testimony Is Relevant and Probative

The defendant challenges the probative value of the CW's anticipated testimony because the CW and the defendant only communicated over Twitter and did not meet or speak in person. That the parties may have the complete record of the communications involving the CW and the defendant does not diminish the probative value of the CW's testimony. As noted in the government's initial filing, the CW has pleaded guilty to a violation of 18 U.S.C. § 241 – the same conspiracy-against-rights charge that was returned against the defendant. The CW is expected to testify about a number of topics, including the CW's own understanding of the nature and objective of the criminal conspiracy; the CW's own understanding of the CW's online interactions with the defendant and other co-conspirators; the CW's understanding of the scope of the defendant's influence

1

on social media and the defendant's role in the conspiracy; the coordinated action taken by the CW, the defendant, and other co-conspirators to disseminate widely certain content on social media; and the various strategies used by the co-conspirators to try to sway the outcome of the 2016 election through the use of social media, including, in particular, the dissemination of the deceptive images that are the subject of the indictment.

All of these topics (and others) are fair grounds for inquiry with the CW, and the defendant offers no authority to the contrary. That the CW may not be able to testify directly as to the defendant's own understanding and intent is an impediment that is not unique to this case – the same would be true of any CW (or other witness) in any case. Witnesses are rarely permitted to testify directly as to the intent of another, but routinely permitted to testify as to the witness's understanding of another's intent based on their contemporaneous interactions. Accordingly, the government submits that the CW's anticipated testimony is relevant and probative of the issues likely to be in dispute at the trial.

II. The Risks to the CW Warrant Protection

The defendant seeks to minimize the risks to the CW of having to testify under his or her real name in open court by contrasting this case with those involving terrorist, gang, or drug-trafficking organizations with well-established reputations for violence. That those elements may not be present here does not mean that the risks to the CW are not real. As noted in the government's motion, the CW occupied a prominent position within the online, alt-right community. The revelation that the CW has pleaded guilty and is cooperating with federal authorities – not just in this case, but in others of an ongoing nature – is expected to attract intense scrutiny from members of that group that are already

2

following this case, as evidenced by the disturbing publicization of information relating to the FBI's case agent on the underlying investigation.

The fact of the CW's cooperation is sure to be seen by many in that community as a profound betrayal, with the result that, at a minimum, online harassment is bound to follow the CW should his or her identity become a matter of public record. That harassment can have negative consequences in and of itself. In addition, to claim that intense online attacks do not endanger a person's physical safety is to ignore the reality of our current world, as evinced in common newspaper headlines. See, e.g., Sheera Frenkel, The Storming of Capitol Hill Was Organized on Social Media, N.Y. TIMES, Jan. 6, 2021, available at https://www.nytimes.com/2021/01/06/us/politics/protesters-storm-capitol-hill-building.html; Eric Lipton, Man Motivated by "Pizzagate" Conspiracy Theory Arrested in Washington Gunfire, N.Y. TIMES, Dec. 5, 2016, available at https://www.nytimes.com/2016/12/05/us/pizzagate-comet-ping-pong-edgar-maddison-welch.html. It is simply (and regrettably) a fact of the times that many acts of politically motivated violence in current society arise from campaigns of online harassment.

Beyond the risk to the CW, the potential consequences include the disruption of the CW's ongoing work with the FBI. It is certainly true that the nature of this work is online and anonymous, but, if the CW's name and location were to become known, the CW would become a target for all who believe that they might be under investigation (whether they are or not). Given the technical proficiency of those with whom the CW associates, it is not difficult to envision multiple scenarios in which the CW's online work could be jeopardized by way of a cyberattack (at a minimum).

The CW's work on other investigations renders the CW different from ordinary citizens whose desire to avoid public testimony has been on occasion rebuffed by courts. For example, in the Rainiere case cited by the defendant, this Court was at pains to distinguish the requests of the defendant's supporters who wished to remain anonymous in expressing their positions to the Court at the defendant's sentencing from the need to protect the identity of a cooperating witness, which, if known, "would present a public safety risk and could discourage witnesses from cooperating in other cases." United States v. Rainere, 18-CR-204 (S-1) (NGG) (VMS), 2021 WL 4522298, at *3 (E.D.N.Y. Oct. 4, 2021); see also United States v. Maxwell, 20-CR-330 (AJN), 2021 WL 5967913, at *3 (S.D.N.Y. Dec. 15, 2021) (distinguishing defense witnesses' desire for anonymity from cases involving "officers that work undercover such that revealing their true name to the public would subject them to violent retaliation by the defendant or other individuals, or would frustrate their ability to remain undercover"). The protection of the CW's ability to continue working with the FBI is a significant factor in favor of the protections sought here.

III.     The Probative Value to the Defendant of the CW's Real Name is Negligible

The defendant claims that the CW's identity is essential for his ability to cross-examine the CW, as is information on the current work being performed by the CW for the FBI. Neither claim has merit. As an initial matter, the government has proposed providing the CW's real name to defense counsel on an attorney's-eyes-only basis. Accordingly, counsel will be able to conduct a background check on the CW, and, if necessary, seek relief from the protections requested here.

In addition, the government has and will continue to comply with its discovery obligations. The current work being performed by the CW is online and conducted through

4

the use of pseudonyms or aliases. The government does not object, as noted in its initial filing, to the defendant's being able to cross the CW concerning the fact that the CW is currently working with the FBI to probe the potential bias of the CW. Beyond that, the CW's current work, which does not bear on this case, is simply not relevant – especially given that the CW's interactions with the defendant during the relevant time were all online and anonymous.[1]

IV.     The Briefing on This Issue from Both Sides Should Remain Under Seal

For the reasons stated in the government's initial brief and this reply, the government respectfully submits that the papers from the parties on this issue should remain under seal until after the CW testifies at trial. As the Court is aware, this case has received non-trivial media attention, and unsealing the motion papers on this topic will likely fuel speculation and interest concerning the CW's identity – an effect which serves no useful purpose and may incrementally elevate the risks to the CW. The government is not requesting that these papers remain sealed indefinitely – only until after the CW's testimony is completed.

Even if the Court were to deny the government's motion for the various protective measures sought, the government would respectfully request that the motion

---

[1]     As discussed in the government's opening brief, the CW's true identity is known only to very few individuals, who, as far as the government is aware, have not divulged it publicly. For the sake of full disclosure, the government is in possession of an interview report (and accompanying notes) from a meeting the government had with the CW in the summer of 2021. The report indicated that one of the online co-conspirators in this case knew the CW's true identity. The CW has clarified that the CW did speak with the co-conspirator over a cellular telephone at one point, but the CW never used the CW's real name; and, as far as the CW is aware, the co-conspirator does not in fact know the CW's true identity.

5

papers remain sealed until after the CW has concluded his or her testimony. Again, unsealing the papers in advance of that testimony would serve no purpose other than further elevating the profile of the case and creating a potentially volatile atmosphere of anticipation leading up to the CW's testimony. Accordingly, the government respectfully requests that, whether the Court grants or denies this motion, the parties' papers and the Court's ruling remain under seal until the conclusion of the CW's testimony.

CONCLUSION

For the reasons stated above, the government respectfully requests that the Court grant its motion for the various protective measures requested by the government in its initial filing.

Dated:  Brooklyn, New York
        March 6, 2023

                                                Respectfully submitted,

                                                BREON PEACE
                                                UNITED STATES ATTORNEY
                                                Eastern District of New York

                                                COREY R. AMUNDSON
                                                Chief
                                                Criminal Division, Public Integrity Section

                          By:     /s/
                                                Erik D. Paulsen
                                                F. Turner Buford
                                                Assistant United States Attorneys
                                                (718) 254-7000

                                                William J. Gullotta
                                                Trial Attorney
                                                (202) 514-0047

cc:  Clerk of the Court (NGG)
      Andrew J. Frisch, Esq. (by E-Mail and ECF)