RTP:FTB/EDP/WJG
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                                    Docket No. <u>21–CR-80 (NGG)</u>

DOUGLASS MACKEY,
    also known as "Ricky Vaughn,"

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S RESPONSE TO THE COURT'S MARCH 1, 2023 ORDER CONCERNING THE NARROWING OF THE ISSUES IN DISPUTE IN THE OUTSTANDING MOTIONS IN LIMINE

                                                                      BREON PEACE
                                                                       United States Attorney
                                                                       Eastern District of New York
                                                                       271 Cadman Plaza East
                                                                       Brooklyn, New York 11201

                                                                       COREY R. AMUNDSON
                                                                       Chief
                                                                       Criminal Division, Public Integrity Section
                                                                       1301 New York Ave. NW, Tenth Floor
                                                                       Washington, D.C. 20004

Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
    (Of Counsel)

William J. Gullotta
Trial Attorney
    (Of Counsel)

# TABLE OF CONTENTS

Argument ........................................................................................................................... 1

    A. Summary of Position ................................................................................................ 1

    B. Areas of Agreement ................................................................................................. 1

    C. Areas of Qualified Agreement ................................................................................ 3

    D. Primary Disputes .................................................................................................... 5

# ARGUMENT

The government respectfully submits this response to the Court's March 1, 2023 Order that the parties narrow their objections concerning the statements that the government wishes to admit in its case in chief. In summary, while the parties have met extensively and narrowed their disagreements, there are still significant portions of dispute. The government incorporates its previous submissions by reference and will focus this briefing on the factual reasons supporting the admission of the material the government wishes to enter into evidence (the "Proffered Statements").

A. Summary of Position

As is addressed in its earlier submissions, the government proposes to offer the Proffered Statements to prove that the defendant conspired with others to interfere with the right to vote, in violation of 18 U.S.C. § 241. The documents have been primarily selected for their tendency to prove intent and coordination/conspiracy, along with other issues, such as identity and venue. While the defendant has suggested that he does not intend to challenge identity, the government of course bears the burden of demonstrating that the defendant intended this crime and that he operated in coordination with others in doing so. The government submits that Proffered Statements are relevant toward those central purposes.

B. Areas of Agreement

The Proffered Statements consist of documents from Twitter bearing the following bates numbers:

- Tweets, bearing bates numbers Tweets-001-131
- Direct Messages, bearing bates numbers DMs-001-97

- Group messages, bearing bates numbers Madman1-001-21, Madman2-001-91, Warrrom-001-49, MicroChat2-001-23, FedFree-001-80, Misc-001-05

The Proffered Statements provided to the Court include considerable portions shaded in red. These are portions that the government has agreed not to offer (the "Omitted Portions"), at least in its case in chief, but includes here for context for the redactions that were made.[1] The Omitted Portions include statements that the government proposed to exclude sua sponte because of certain prejudicial aspects, as well as areas that the defense persuaded the government not to offer for, among other reasons, prejudice, convenience and cumulative nature. In some cases, the parties have agreed to replace a term with a surrogate word or phrase (shaded in magenta) if a sentence could not be expressed in a contextual manner without a replacement word or phrase.[2] These Omitted Portions include the following areas of general agreement:

- 
-
-

---

[1] As is noted below, the government expects that the defendant may testify, in which case some of this evidence may, and likely will, become admissible on alternative grounds.

[2] Given these modifications, to the extent that Anthony Cunder, the government's summary witness who will be offering these statements, will be expected to certify the accuracy of the materials therein, defense counsel has represented that he will not attempt to lead the jury to question the completeness or accuracy of those materials given the parties' collaboration in sanitizing them.

- 
- 
- 
- 
- 
- 

- 

C.      <u>Areas of Qualified Agreement</u>

The defendant is not, and should not, be on trial because of his politics. However, given the nature of the charged offense and the overwhelmingly political nature of the defendant's on-line activities, much of the evidence relevant to a determination of the defendant's intent and explanation of his conspiratorial activities intersects with his political opinions and activities.

The defendant is charged with distributing deceptive images suggesting that voters for then-presidential-candidate Clinton should vote in an ineffective manner. One image featured an African-American woman; the other a Latina woman, with the accompanying text in Spanish. The images resemble real campaign advertisements from the Clinton campaign and are not facially humorous. In assessing what the defendant truly intended by distributing such content, in the context of an election he himself believed was on a "knife's edge," the government submits that a number of his statements, including

3

political statements, are necessarily relevant, including his statements about the subjects of the images: Clinton voters, African-Americans and women.

For example, as is noted above, the defendant and his associates and co-conspirators, often used racially insulting language. The government has sanitized much of this language and does not currently intend to offer it in its case in chief, even where the government believes that its probative value outweighs its prejudicial value.[3] Some of this language, however, is immediately relevant to the current issue and should be admissible. As referenced in prior submissions, the defendant stated his opinion that black people are the "most gullible people ever." (DMs-010) This statement, in combination with his comments about election turnout and his apparent belief of the importance of the black vote for Hillary Clinton, leads to the fair inference that he intended that the distribution of the deceptive images to affect voter turnout and the election. Such language is not unfairly prejudicial given the context and has substantial probative value.

Similarly, the defendant and his associates and co-conspirators have made numerous disparaging statements about women. The government has sanitized that language and will not offer it in its case in chief. However, the defendant has made other statements about women that bear more direct relevance on the voting issues at hand. For example, the defendant has made statements suggesting that women, and/or certain women, should not be permitted to vote, and he has tweeted negatively about the Nineteenth Amendment to the

---

[3] For example, in one of his first tweets after returning to Twitter, the defendant retweeted the following: "Ricky Vaughn Banned Again by Jack Personally for "Disenfranchising" His Pet Negroes." The government submits that this statement may become relevant depending on the nature of the defense, or in cross-examination if the defendant testifies.

Constitution. The government has decided not to offer such statements at this juncture, but believes that they are admissible given the nature of this case, and submits that the trial may develop in a manner such that the government would petition the court and seek their admission.

D. <u>Primary Disputes</u>

As an initial matter, the defendant broadly objects to a number of references and photographs of President Trump, and references and photographs of Hillary Clinton and Bernie Sanders. The government has attempted to minimize and redact some of these materials, but not to the degree requested by the defense, particularly where the government believes that removal of a photo or phrase would remove coherence from the activities of the defendant and his associates. Here, the government submits that a certain degree of reference to political figures and policies is unavoidable and must be accepted. The defendant—a self-proclaimed election influencer—is charged with distributing false information about the manner of voting less than a week before a presidential election. Much of the evidence of his coordinated use of Twitter relates to political matters during the 2016 election. In such circumstances, the relevant evidence is bound to have a political valence.

The central dispute that requires the Court's attention, however, relates to the admissibility of statements from the direct message groups flagged in the government's initial January 30, 2023 in limine motion. Here, the government understands he defendant to have a categorical disagreement with the inclusion of messages from these groups because of the defendant's silence/absence during certain periods of time. As is described in its original motion, and in more detail below, the government submits that the statements during these

5

contested periods of time should be admitted (1) as party-opponent statements, (2) as co-conspirator statements and (3) as hearsay statements for the effect on the listeners, including the defendant and co-conspirators.

In summary, the government will show at trial that the defendant distributed the deceptive images discussed above and did so in an anonymous fashion. After the government learned the defendant's true identity, the government commenced an investigation and discovered that the defendant was not a solo actor. To the contrary, the government's investigation revealed that the defendant had been part of three separate private groups that appear to have formulated, created and/or eventually distributed the deceptive images. Although the defendant received the most public attention for this activity, given his significant profile and following at the time of the offense, he was actually part of a community that committed these offenses, as revealed in the Proffered Statements.

Approximately one month prior to the 2016 Election, on or about October 5, 2016, the defendant was removed from Twitter and thus removed from the three groups, interrupting his attendance against his will. For the reasons stated in the January 30, 2023 Motion in Limine, the government submits that relevant statements from these three groups, including statements that took place when he was absent, should be admitted.[4]

- <u>The Madman Group (Madman #2)</u>. The defendant was a founding member of the Madman Group, which focused on pushing coordinated political messaging, often centered on memes. He was a member of Madman and its predecessor group starting in March 2016, approximately seven months before his initial removal from Twitter. The group had begun discussing steps that would become the deceptive images by approximately September 26, 2016,

---

[4] The statements from the other groups, such as Fed Free Hate Chat, Madman #1 and some short miscellaneous groups, are relevant only insofar as they provide evidence of the defendant's intent and context for the later acts.

6

copying earlier efforts made during Brexit, while the defendant was still a member of this group. He was removed from Twitter about ten days afterwards. The group went on to develop a significant number of images like the deceptive images after the defendant left and appears to be the primary source of images that fed the other groups, if not the internet at large. On or around, November 2, 2016, the defendant re-tweeted one of the images that appears to have been developed in the Madman group, forwarding a tweet containing a deceptive image that was sent by a member of the Warroom group. The defendant returned to the Madman group after the election.

The relevant portions of the Proffered statements concerning the Madman Group are as follows:

- MadMan2-001-63: Statements prior to conspiracy's beginning. Offered as defendant's statements, context for defendant's statements and the fact, not offered for the truth of the statements presented, that the defendant received the statements and the effect that those statements had on the defendant's state of mind (the listener).[5]

- Madman2-064: Statements during conspiracy while defendant is in the group. Offered as co-conspirator statements and fact that defendant/co-conspirators received them/effect on listeners.

- Madman2-065-89: Statements during conspiracy with defendant out of the group. Offered as co-conspirator statements and fact that co-conspirators received them/effect on listeners.

- Madman2-090: Statements of the defendant after the conspiracy while defendant is in the group. Offered as defendant's statements and fact that he received them/effect on listener.

- <u>The Warroom Group</u>. The defendant was a member of the Warroom Group starting around August 1, 2016. Like the Madman Group, the group focused on pushing coordinated political messaging, often centered on memes. When the defendant was removed from Twitter on or about October 5, 2016, the group had not yet begun discussing the distribution of the deceptive images. The defendant returned to the Warroom group around October 11, 2016, was present when the deceptive images were discussed and was present when he committed the charged offenses. The defendant returned to the Warroom after his second removal from Twitter and celebrated his offenses with the

---

[5] The government will use the phrase "fact that he received them/effect on listener" going forward to more succinctly state the hearsay argument expressed in this bullet point.

members.

The relevant portions of the Proffered Statements concerning the Warroom Group are as follows:

- Warroom-001-16: Statements prior to conspiracy's beginning. Offered as defendant's statements, context for defendant's statements and fact that he received them/effect on listener.

- Warroom-016-20: Statements during conspiracy with defendant out of the group. Offered as co-conspirator statements and fact that co-conspirators received them/effect on listeners.

- Warroom-021-36: Statements during conspiracy while defendant is in the group. Offered as defendant's statements, co-conspirator statements and fact that defendant/co-conspirators received them/effect on listeners.

- Warroom-037 (top half): Statements during conspiracy with defendant out of the group. Offered as co-conspirator statements and fact that co-conspirators received them/effect on listeners.

- Warroom-037-49: Statements during conspiracy while defendant is in the group. Offered as defendant's statements, co-conspirator statements and fact that defendant/co-conspirators received them/effect on listeners.

- The Micro Group (Micro Chat #2). The defendant joined the Micro Group in or around July 2016. Like the other groups, it was focused on pushing coordinated political messaging, including memes. The defendant did not rejoin the group after he was removed in October 2016, but it contained several overlapping members with the Warroom, including Microchip and HalleyBorderCol, both of which shared the same deceptive images to both the Warroom and Micro groups.

The relevant portions of the Proffered Statements concerning the Micro Group are as follows:

- MicroChat2-001-04: Statements prior to conspiracy beginning, offered as defendant's statements, context for defendant's statements and fact that he received them/effect on listener.

- MicroChat2-006-23: Statements during conspiracy with defendant out of the group. Offered as co-conspirator

statements and fact that co-conspirators received them/effect on listeners.

The government submits that the relevant statements from each of these three groups should be admissible. The defendant was a member of each group at various points, and the defendant was watched and discussed by the membership of each group when he was absent, given the centrality of both his previous role and his ongoing role in his pushing the various groups' materials. Further, the ideas behind the deceptive materials appear to have cross-pollinated between the groups, with different iterations of the deceptive images being developed and shared among the groups' sometimes overlapping membership as the election approached.

The government understands the defendant to be arguing that the conversations in these groups represent either one, two or three separate conspiracies, despite their common aims, activities and members (to include the defendant), or perhaps that the defendant's level involvement in these groups is insufficient to show collective intent, despite the defendant's ultimately acting on the groups' aims. The government, to the contrary, submits that these statements, in combination with the provable acts of the defendant in tweeting and retweeting the deceptive images (including by retweeting a co-conspirator), provides a proper basis for admitting these materials for presentation to the jury, at which point the defendant is empowered to make arguments about the defendant's role to the fact finder. United States v. Olivo, 664 Fed. App'x 77, 80 (2d Cir. 2016) ("The law does not require proof of [the identity of co-conspirators or their roles in the conspiracy] to permit a preponderance finding (1) that a conspiracy existed, (2) the declarants were members of the conspiracy, and (3) that the statements were made in furtherance thereof.");

9

see also United States v. Kandic, 17-CR-449, 2022 WL 1266431, at *5 (E.D.N.Y. Apr. 28, 2022) (endorsing the Geaney protocol whereby "'statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence' establishing 'that a conspiracy existed, that the defendant and the declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy.'" (quoting United States v. Loera, No. 09-CR-0466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018))).

Dated:     Brooklyn, New York
          March 7, 2023

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York

                                        COREY R. AMUNDSON
                                        Chief
                                        Criminal Division, Public Integrity Section

                           By:    /s/
                                        Erik D. Paulsen
                                        F. Turner Buford
                                        Assistant United States Attorneys
                                        (718) 254-7000

                                        William J. Gullotta
                                        Trial Attorney
                                        (202) 514-0047

cc:    Clerk of the Court (NGG)
       Andrew J. Frisch, Esq. (by E-Mail and ECF)