The Law Offices of
ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

March 11, 2023

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *United States v. Douglass Mackey*, Criminal Docket No. 21-0080 (NGG)

Dear Judge Garaufis:

On behalf of Douglass Mackey, I respectfully submit this letter as a motion to preclude (1) cross-examination of Mr. Mackey on inferences of racism, misogyny, and any related or similar views or beliefs (in addition to their use on the government's case, as discussed in Mr. Mackey's motion of earlier this week (Docket No. 81); (2) evidence from which the government apparently intends to draw incriminating inferences from Mr. Mackey's anonymity as "Ricky Vaughn" long before the memes in question were ever discussed or transmitted; and (3) an interaction in 2018 between the FBI and Mr. Mackey and his then-attorney which, if introduced, would infringe on Mr. Mackey's rights to remain silent and counsel.

A.   *Racism and Misogyny and Other Inflammatory Statements,*
     *Views, and Beliefs Have No Place in this Case*

The universe of tweets and online chats from which the government's case is culled includes a goulash of comments made by the cooperating witness and the alleged conspirators, including Mr. Mackey, aimed at race, gender, and religious, cultural, and sexual identity. Many of the comments are so juvenile and offensive that their purpose could only have been to shock sensibilities and attract attention. Other comments bespeak generally disfavored social and political views, such as Mr. Mackey's reflections on the Nineteenth Amendment or his view of the gulf between the Democratic Party's favorable messaging to minority communities and the Democratic Party's performance for them.

The government has agreed not to use many of these tweets and chats in its case, but reserves the right to use others on its case [*see* Docket No. 81] and otherwise cross-examine Mr. Mackey, should he testify, to tie his purported racism and misogyny to the two allegedly deceptive memes. The government should not be able to use any of these tweets and chats for any purpose.

The crime with which Mr. Mackey is charged, 18 U.S.C. § 241, criminalizes conspiracies against rights, "whether or not motivated by racial discrimination" or any type of

animus. *United States v. Guest,* 383 US 745, 760 (1966). "When there is "no link between the alleged racism and harm . . . the probative value of . . . accusations [of racism] was substantially outweighed by the danger of sidetracking the jury and misusing time on a mini-trial on racism." *United States v. Martin*, 248 F.3d 1161 (7th Cir. 2000), as corrected (Feb. 7, 2001).

The government's position, if permitted, will infect the trial with the conspirators' inflammatory statements, views, or beliefs, which create paradigmatic risks of undue prejudice and confusion, all but requiring preclusion under Rules 401 and 403 as a matter of law. The tweets and chats at issue "involve conduct more inflammatory than the charged crime," weighing toward undue prejudice. *See United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006). The government's detailed 24-page Complaint [Docket No. 1] claims that Mr. Mackey shared the memes to affect voter turnout, not that he acted out of racist or misogynist animus. *See, e.g.,* Complaint at 21-22 ("Approximately two weeks later, on or about November 2, 2016, MACKEY tweeted the following: 'Obviously, we can win Pennsylvania. The key is to drive up turnout with non-college whites, and limit black turnout.')" The Court's ruling on Mr. Mackey's motion to dismiss correctly summarized the government's position that the defendant "intended to suppress *Democratic* voters." Docket No. 54 at 2 (emphasis added).

The government thereafter took the view that "racial animus" was relevant to show intent. As a highly charged example:

> Given that the defendant is charged with distributing Deceptive Images depicting two women, one African-American and one Latina, which both suggested that votes for a specific candidate should be cast in an ineffective manner, the government submits that the defendant's own statements on matters such as whether women should vote are both admissible and highly relevant toward the defendant's intent in committing the acts charged in the indictment.

Docket No. 57 at 15. In the government's view, "should the defendant suggest, as he has in prior submissions, that his acts were done in satire, the government submits that such statements would be all the more relevant." *Id*. at 15 n. 5. Whether or not Mr. Mackey's defense at trial is predicated on a claim of satire, the government's argument suggests its view that Mr. Mackey's alleged animus towards women and minorities makes it less likely that the memes were in jest. But Mr. Mackey is not charged with race or gender discrimination or a bias crime.

It cannot be persuasively disputed that different demographic groups tend to vote for different political parties at different rates, and that advocates for different campaigns aim to increase and depress turnout of these groups for political advantage - - without animus. The government seems to suggest that Mr. Mackey tried to depress the true votes of certain groups because he didn't like them, but such a motive is independent from electing Trump or defeating Clinton. If Mr. Mackey were on trial for sending memes that threatened people based on race and claimed at trial that he had only been joking, prior statements truly evincing animus might be relevant. But Mr. Mackey is charged with conspiring to deceive apparent voters of his preferred candidate's opponent about the correct manner of voting. His thinking about any particular

2

demographic has nothing to do with whether he intended to deceive voters to help Trump win.

The government has also argued that it "should be permitted to demonstrate the defendant's intent by admitting the defendant's negative opinions about the credulity of African-Americans." Docket No. 69 at 8. This theory is also too far afield. As argued in Mr. Mackey's filing earlier this week [Docket No. 81 at 5], a statement of Mr. Mackey along these lines was a momentary and exaggerated reaction in November 2015 (a year before the sharing of the memes) to a false report of a march of the Ku Klux Klan in Missouri. It has no true value to proving intent to trick voters to depress turnout. More, Mr. Mackey had no hand in creating the memes; he presumably would have further disseminated any meme that he came upon aimed at any of Secretary Clinton's presumptive constituencies.

While no final decision has been made about whether Mr. Mackey will testify, his testifying at trial is more likely than in the typical criminal case. But if the government is permitted to cross-examine him about these various shocking and inflammatory statements, views, and beliefs, and thereby unduly inject these issues into the trial, it will serve to deny him his right to testify: the risk is enormous that he will be convicted because the jury is offended by shocking and inflammatory statements, views, and beliefs that it considers racist and/or misogynist.

Mr. Mackey is not looking to have it both ways; as the government cannot reasonably deny, its cooperating witness made far more incendiary and shocking statements along these lines than Mr. Mackey. Mr. Mackey does not currently intend to cross-examine the cooperating witness on these issues of racial and gender animus. But if the government is permitted to cross-examine Mr. Mackey on these issues, he will be forced to do so to protect himself, whether or not he ultimately decides to testify, and the fair pursuit of justice will be compromised.

B.  *Mr. Mackey's General Interest in Anonymity is Irrelevant and Unduly Prejudicial*

The government intends to call at least four witnesses whose exclusive or principal purpose is to show that Mr. Mackey had a general interest in publishing online anonymously months and years before he shared the allegedly deceptive memes. Such testimony would be improper. As Mr. Mackey has demonstrated in earlier filings, online anonymity is legal, especially to express or advance political viewpoints, and is protected by the First Amendment. The parties have already entered into a signed stipulation that Mr. Mackey was "Ricky Vaughn;" identity is thus not an issue in this case, nor that Mr. Mackey published online through "Ricky Vaughn." Testimony about Mr. Mackey's anonymity is not part of the government's benign "background and context," but unduly infers something incriminating from an interest in generally remaining anonymous online. Such testimony invites the jury to at least suspect that Mr. Mackey preferred anonymity in the way that a robber at a bank dons a mask before approaching the teller.

The witnesses include: (1) Marc Bertucci, Mr. Mackey's roommate in Manhattan

for a year, who would apparently testify that he did not know that Mr. Mackey was Ricky Vaughn; (2) Loren Feldman, a documentary filmmaker, who conducted a video interview of Mr. Mackey, who appeared anonymously in silhouette; (3) Amy Stephen, who interviewed Mr. Mackey for a podcast in early 2016; and (4) Paul Nehlen, a Congressional candidate, from whom Mr. Mackey sought employment in 2017 and thereafter publicly identified Mr. Mackey as "Ricky Vaughn."

I hereby request that the government provide the Court with GX 711, Mr. Feldman's interview with Mr. Mackey, and I incorporate it by reference hereto. The interview establishes that Mr. Mackey wished to remain anonymous for reasons having nothing to do with anything illegal. None of the above-cited testimony is admissible. None of it has anything to do with whether or not Mr. Mackey intended to injure the right to vote when he shared the two memes. Rather, it risks undue prejudice and confusion from an inference that Mr Mackey had something to hide by exercising his right under the First Amendment to free speech and publish anonymously. Neither this testimony or anything like it should be permitted.

Lest the government seek to compare Mr. Mackey to its cooperating witness, the latter will be testifying against Mr Mackey pursuant to a cooperation agreement. The issues surrounding the witness's wish to remain anonymous testifying in court to gain the benefits from cooperation have nothing to do with Mr. Mackey's interest in tweeting online as Ricky Vaughn.

C.  *Testimony About an FBI agent's encounter with*
    *Mr. Mackey and His Lawyer Should be Precluded*

According to reports of FBI Special Agent Jamie Dvorsky, marked by the government as 3500-JAD-2 and 3500-JAD-17 (submitted under seal herewith), she and another agent traveled to Florida in 2018 and met Mr. Mackey at a Panera Bread in Boynton Beach. Mr. Mackey told her that he would be happy to speak to the agents if they would first contact his attorney, Richard Lubin. Mr. Lubin thereafter contacted Agent Dvorsky and said that Mr. Mackey would "100% cooperate and talk to the FBI." Thereafter, Mr. Lubin did not contact the FBI nor return multiple calls.

For two reasons, this testimony should not be permitted and is not otherwise proper as "background and context." First, it seeks to draw incriminating inferences from Mr. Mackey's rights to counsel and to remain silent. Second, any inference of any aforethought to the lawyer's failure to return Agent's Dvorsky's calls appears unwarranted based on the sealed letter filed contemporaneously herewith.

Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch

cc: United States Attorney's Office