UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x

UNITED STATES OF AMERICA,

- against -  21-CR-0080 (AMD)

DOUGLASS MACKEY,

Defendant.

------------------------------------------------------- x

MEMORANDUM IN AID OF SENTENCING
ON BEHALF OF DOUGLASS MACKEY

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorney for Douglass Mackey*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x

UNITED STATES OF AMERICA,

- against - 21-CR-0080 (AMD)

DOUGLASS MACKEY,

Defendant.

------------------------------------------------------- x

MEMORANDUM IN AID OF SENTENCING
ON BEHALF OF DOUGLASS MACKEY

Introduction

Three years before the government arrested Douglass Mackey for the charge in this case, he moved to Florida to check himself into an intensive inpatient course of psychotherapy followed by outpatient psychotherapy. As part of Mr. Mackey's self-examination, he rededicated himself to family and friends, faith, and values of selflessness and love. Upon working in Florida at a law firm after his inpatient therapy, Mr. Mackey met his future wife.

The Douglass Mackey who stands before the Court for sentencing is not Ricky Vaughn of seven years ago, but a role model to friends he met in therapy, a brother in faith in his Church, and a devoted husband to his wife, who is expected to give birth to the couple's first child in November. Years before Mr. Mackey's arrest, he looked in his own mirror and embraced the difficult work of honest introspection for which many lack true courage and resolve. The Court most effectively encourages others to follow Mr. Mackey's example by imposing a non-custodial sentence.

If the Court cannot see clear to impose a non-custodial sentence, it should grant bond pending appeal and otherwise stay the sentence. While Mr. Mackey's prospective issues on appeal are substantial and not frivolous, thereby satisfying this Circuit's applicable standard [*see United States v. Randell*, 761 F.2d 122, 135 (2d Cir. 1985)], the possibility of reversal in this case on a number of appellate issues is real.

*A. "It is so clear to me that Doug's dark days have passed" [Exhibit D at 2]*

The twelve accompanying letters submitted in Mr. Mackey's support attest to Mr. Mackey's defining virtues of selflessness, honesty, and devotion from multiple perspectives: his parents, siblings, wife, friends, and even a juror from trial.

Kathy Mackey, Mr. Mackey's mother, recalls concern more than seven years ago "as we saw Doug slip away from society, look unwell and detached." Exhibit H at 1. Scott Mackey, Doug's father, "knew that he seemed unhappy, had become withdrawn from his family, and was spending an excessive amount of time online. We were very concerned that he was suffering from depression and tried to get him to seek counseling." Exhibit I at 1. When Mr. Mackey was exposed as "Ricky Vaughn," his sister Elizabeth "was disturbed and angry, and felt convinced that he was a 'bad guy.' After all, that's the mindset I had developed from my hyper liberal circles of influence." Exhibit D at 1; see Exhibit H at 1 ("The family was shocked, upset, angry and at the same worried about Doug."). Mr. Mackey's brother Eric tried "to conceptualize how my brother, a smart, quiet, introverted person, became an obnoxious internet troll." Exhibit F at 1.

When Kathy a year or two ago asked Mr. Mackey what his life would look like had his true identity not been revealed, he replied, "[I]t was the best thing that happened, it turned

my life around." Exhibit H at 2. Mr. Mackey's sister explains the transformation:

> Immediately Doug went to an extended inpatient rehabilitation center, followed the 12 steps program, and devoted himself to the Catholic faith. It took some time for me to choose to participate in his healing journey and make amends.
>
> . . . .
>
> What I found from Doug's story between 2018-2020 were two truths. First, it often takes experiencing an incredibly challenging life event to catalyze lasting and dramatic change in oneself. Second, those who haven't undergone such a transformation often have a very difficult time accepting it in others.

Exhibit D at 1, 2.

"The family followed a therapist's direction and painstakingly allowed Doug to own his past and gather the tools and strength he needed to move on to construct a positive life." Exhibit H at 1. His mother undertook "the process of accepting the reality of Doug's previous online life, now focusing on building a mother-son relationship through communication, honesty and forgiveness." Exhibit H at 1. He learned "to be authentic and honest with himself and others. He has come full-circle and is now part of a rehabilitative therapy alumni group, attending monthly meetings and events while also being "on-call" for new members who may be in crisis. Doug has formed many positive relationships through his continued volunteer work." Exhibit H at 1.

Mr. Mackey's brother Eric recounts Mr. Mackey's active support in 2017 when Eric suffered a traumatic brain injury, despite Eric's view that he had never been there for Mr. Mackey: "Doug was able to provide [me] both support and structure, even if he didn't have it or recognize a need for it in his own life." Exhibit F at 2. "Since he has undergone intensive counseling, he seems at peace with himself and the world. He has worked with other young people with similar experiences and to use his own journey to mentor them and help them . . . .

He is an example to others about how to self-improve on one's own." Exhibit I at 1. As Mr. Mackey's sister attests, "It is so clear to me that Doug's dark days have passed." Exhibit D at 2; Exhibit I at 1 ("Doug is no longer in that dark place.").

After the conclusion of Mr. Mackey's inpatient therapy, he began working at a law firm in Florida where he met Ines, now his wife:

> I fell in love with Doug because he is a dedicated, family-oriented person with a pure sense of humor. With Doug, I always felt stimulated with intellectual conversations. From day one, he has shown himself to be a true gentleman, loyal, honest, compassionate and a person I can count on at any time. These qualities have only been confirmed with the passage of time.
>
> . . . .
>
> Despite whatever may have happened in his past, I have never known him to conduct himself in a negative manner. Instead, it is exactly the opposite. I have witnessed him always trying to be helpful, whether it be a church food drive, giving blood, or volunteering with the local rehabilitation center. Most importantly, he is always loyal and helpful to friends.

Exhibit G at 1, 2.

*B. "If anyone were to ask me who my role models are in life, Doug Mackey would be near the top of that list" [Exhibit C at 2]*

From Mr. Mackey's inpatient therapy and attendant rededication to his faith, he has bonded with new friends, who know him as reliable, selfless, and devoted.

Joshua Payne met Mr. Mackey at the rehabilitation facility in Florida. Mr. Payne was at a low point in his life and credits Mr. Mackey for helping him recover:

> Feelings of loneliness due to a perceived alienation based on my appearance or skin tone, hopelessness from repeated professional rejections, and confusion stemming from a lack of identity common to adopted children such as myself left me in such a state that my family sent me to a rehabilitation facility in Southern Florida by the year's end.
>
> . . . .

> The journey to becoming a productive member of society and ultimately to marriage and fatherhood was arduous, and would not have been possible without the community of people that came alongside me in that season. Men like Douglass Mackey assisted me in reconstructing a positive outlook on life, took the time to help with simple things like giving me rides and feeding me when I had no transport or job, and compassionately supported me through asking the heavy and self-reflective questions which are hallmarks of such a season. I am beyond grateful to have met him, and to be able to call him a brother in the faith who I am able to look up to and come to for help.

Exhibit J.

William Daiber also met Mr. Mackey at the facility and came to recognize him "as a man of faith and integrity who's deeply committed to a life of service to others:"

> Although never in doubt, Douglass' character was crystallized for me two years ago, when a friend of mine who struggles with addiction was in crisis. When I needed someone for support to do a wellness check, Douglass was the first person I called. Although Douglass didn't know this person, without hesitation he dropped everything at a moment's notice to support me and my friend in need. Without his help, I wouldn't have been able to get my friend into a detox center for the treatment he needed.

Exhibit B.

Thomas J. Dubicki met Mr. Mackey in Florida at church and became friends while playing basketball and volleyball, carpooling to bible study, and dinners with mutual friends.

> Doug has shown me signs of wisdom and experience when I look back on all we've done together as brothers in Christ. I must admit that having a friend you can be totally vulnerable and honest about any given situation is crucially important. I am blessed to say I have that type of friendship with Doug. Having strong friendships that are founded upon truth and sacrifice for others perfectly explains the sentiment I feel for Doug. I consider Doug as stated above, "to be part of my family". At any given time of day, I know I can give Doug a call and he will answer. If there are questions I have regarding any given topic, I know I can call Doug. If I am looking for a home cooked meal and a night out with good company, Doug is the man to call. See, after knowing Doug for some time now I see how valuable our friendship really is.

Exhibit C at 1.

Saud Hashmi, a captain in the United States Merchant Marine, knows Mr. Mackey as

> a friend who would drive hours imply to help you move furniture, a son who feels committed to reflecting the ideals of his family and community, a husband to whom his vows are the defining principles of his character, and a future father who wishes only to nurture and protect his child in a world that is changing so quickly at times we lose our place.

Captain Hashmi attests that Mr. Mackey "holds himself to a high standard ethically, morally and conscientiously." Exhibit E at 2.

Daniel A. Veres met Mr. Mackey at church and knows him to be "a person of unwavering honesty and a strong moral compass. He consistently goes above and beyond to help those in need, demonstrating his selflessness and dedication to making our community a better place." Exhibit L at 1. Brandon and Jeanne Brady met Mr. Mackey at bible study and know him to be "an upstanding citizen, strong in his Catholic Faith and truly devoted in Charity to his fellow man." Exhibit A; *see* Exhibit G at 2 ("I have witnessed Doug has an unshakeable faith. You can negotiate almost everything with Doug, but you cannot negotiate missing church on Sunday . . . . I think that becoming a believer has made him a better person and I see him improving every day with Christian principles.").

After trial, juror Valery Rodolico, a legal proofreader at Wachtel, Lipton, Rosen & Katz, asked if she could write a letter in Mr. Mackey's support. Ms. Rodolico believes that Mr. Mackey "is an intelligent and caring young man" who "made one grave error in judgment" and "acted impulsively." Exhibit K.

The testaments to Mr. Mackey's personal evolution are heartfelt and genuine. "May he be able to move forward with all the goodness in his life that he has worked so hard to create." Exhibit D at 2. "I know he will be a great father because I have seen him be a

wonderful uncle to his nephew, a boy who always likes to talk about the creatures of the ocean. Doug is always spending time with him, buying him books, teaching him how to read, taking him to museums, to explore nature, playing sports with him, and taking him to see the Miami Marlins, the Florida Panthers, or the Miami Heat." Exhibit G at 2.

*C. The Advisory Range and the Grounds for Departure*

The Court should find that Mr. Mackey's applicable range is 8, with a Criminal History Category of I, corresponding to a range of 0 to 6 months. The parties appear to agree that the base offense level is not 12 as reported by the presentence report, but 10 upon application of the anticipated change in U.S.S.G. 4C1.1. *See* Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index effective Nov. 1, 2023, at 51-53.

In addition, the Court should find that Mr. Mackey is entitled to a two-point downward adjustment for minor role under U.S.S.G. 3B1.2(b). The applicable commentary provides that the Court should consider the degree to which the defendant understood the scope and structure of the crime; the degree to which the defendant participated in planning or organizing the activity; the degree to which the defendant exercised or influenced the exercise of decision-making authority; and the nature and extent of the defendant's participation in the commission of the crime, including the defendant's acts and the responsibility and discretion in performing those acts. Even if a defendant plays an essential or indispensable role, he or she is entitled to a mitigating role adjustment if he or she was substantially less culpable than the crime's average participant. Application Note 3(C) to U.S.S.G. 3B1.2.

Here, Mr. Mackey was not present in any of the chats when others discussed and formulated the memes in question [*see* T 857 (the government conceding that "the defendant is

not actually present when that conversation is happening"); never had any contact whatsoever with any of the purported co-conspirators outside of chats; and neither directed the creation of memes nor created any himself. To the contrary, Mr. Mackey shared a total of three memes within a day or so; none of which were established to have originated in the above-described chat; two of which were different from memes formulated in the chat; he found two of the memes on 4chan where the volume of vote-by-text memes was "insane;" and he received the third by automatic operation of Twitter when the tweet accompanying the meme mentioned his online name. Mr. Mackey acted with no planning other than the act of clicking upon seeing the memes. With a mitigating role adjustment, the resulting offense level is 8, corresponding to a range of 0 to 6 months.

Mr. Mackey should also be afforded a downward departure for aberrant behavior (or its consideration if the Court agrees that his range is 0 to 6 months). Aberrant behavior is defined in the Sentencing Guidelines as a single criminal occurrence or transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. See Application Note 1, U.S.S.G. § 5K2.20. A downward departure may not be permitted under any of the following circumstances, none of which are present here: (1) the offense involves serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or dangerous weapon; (3) the offense is a serious drug trafficking offense; (4) the defendant has more than one criminal history point; or (5) the defendant has a prior federal or state felony conviction. *See* U.S.S.G. § 5K2.20.

Mr. Mackey saw two memes on 4Chan and shared them and later shared a meme

that he received because the sender mentioned his avatar in her post. Apart from these clicks, Mr. Mackey has never engaged in any criminal activity and never been arrested.

Conclusion

For these reasons, the Court should impose a non-custodial sentence. If the Court cannot see clear to impose a non-custodial sentence, it should grant bond pending appeal and otherwise stay the sentence.[1]

Dated: September 26, 2023

Respectfully submitted,

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorney for Douglass Mackey*

[1] Mr. Mackey's prospective issues on appeal have been the subject of pretrial and post-trial briefing; his extensive briefing is incorporated by reference as if fully set forth herein in support of his application for bond pending appeal and a stay of sentence.