1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - X
 3
    UNITED STATES OF AMERICA,     : 21CR80(AMD)
 4                                :
              Plaintiff,          :
 5                                :
         -against-               : United States Courthouse
 6                                : Brooklyn, New York
    DOUGLASS MACKEY,             :
 7                                :
              Defendant.         : Wednesday, October 18, 2023
 8                                : 11:30 a.m.
                                  :
 9                                :
                                  :
10
    - - - - - - - - - - - - - X
11
              TRANSCRIPT OF CRIMINAL CAUSE FOR A SENTENCING
12            BEFORE THE HONORABLE ANN M. DONNELLY
                  UNITED STATES DISTRICT JUDGE
13
                    A P P E A R A N C E S:
14
    For the Government:    UNITED STATES ATTORNEY'S OFFICE
15                         Eastern District of New York
                           271 Cadman Plaza East
16                         Brooklyn, New York 11201
                        BY:ERIK PAULSEN, ESQ.
17                         TURNER BUFORD, ESQ.
                           WILLIAM GULLOTTA, ESQ.
18                         Assistant United States Attorneys
    For the Defendant:    ANDREW J. FRISCH, ESQ.
19                         40 Fulton Street
                           New York, NY 10038
20

21

22

    Court Reporter:   SOPHIE NOLAN
23                     225 Cadman Plaza East/Brooklyn, NY 11201
                       NolanEDNY@aol.com
24  Proceedings recorded by mechanical stenography, transcript
    produced by Computer-Aided Transcription
25
```

```
                      Proceedings                      2
```

1                       (In open court.)

2               (The Hon. Ann M. Donnelly, presiding.)

3                      (Defendant present.)

4          THE COURTROOM DEPUTY:  This is criminal cause for

5     sentencing, Docket Number 21-CR-80, *USA versus Douglass*

6     *Mackey*.

7               Counsel, state your appearance, government first.

8               MR. PAULSEN:  Good morning, Your Honor.  Erik

9     Paulsen for the United States Government.  I'm joined at

10    counsel table by Turner Buford, Bill Gullotta and also Erica

11    Vest from Probation.

12              THE COURT:  Good morning.

13              MR. FRISCH:  For Mr. Mackey, Andrew Frisch.  Good

14    morning.

15              THE COURT:  Good morning, Mr. Frisch.

16              Good morning, Mr. Mackey.

17              Mr. Frisch, we got your communication this morning

18    that Mr. Mackey's wife had a baby last night.  I certainly

19    would have adjourned this proceeding if you wanted me to.

20              MR. FRISCH:  I appreciate that.  As I advised the

21    Court, and I wanted to give you a heads up to know about it as

22    opposed to telling you on the bench, she had an emergency

23    C-section last night.  Everyone is fine as far as I know.

24    However, we're prepared to proceed today.

25              THE COURT:  I understand that she's on the phone as

Proceedings                                                  3

1   well as Mr. Mackey's mother; is that correct?

2            MR. FRISCH:  That's my understanding.

3            THE COURT:  Can both Mrs. Mackeys, can everybody

4   hear?

5            MS. MACKEY:  Good morning this is Kathy Mackey.  I'm

6   having a hard time hearing you.  His wife was not able to join

7   us.

8            THE COURT:  Okay.  And I am going to ask you to mute

9   if you could okay?

10           MS. MACKEY:  Okay.

11           THE COURT:  This is a sentencing proceeding.

12  Mr. Mackey was convicted after a jury trial of the sole count

13  of the indictment which charges that between September and

14  November of 2016, he, together with others, conspired to

15  injure, oppress, threaten or intimidate one or more people in

16  the free exercise and enjoyment of a right and privilege

17  secured to them by the Constitution and laws of the United

18  States, specifically the right to vote.

19           I'm going to go over the materials that I reviewed

20  in preparation for today's proceeding.  Obviously I presided

21  over the trial, but also in connection with the trial and in

22  connection with today's proceeding, I reviewed Justice

23  Garaufis's opinions on various matters.  I've also re-reviewed

24  the trial transcripts as well as the exhibits that were

25  introduced.

Proceedings                                               4

1          I've reviewed the presentence investigation report,

2    the one from September 8th of 2023.  That included a

3    sentencing recommendation.  I've also reviewed the addendum to

4    the presentence investigation report of October 5th of 2023,

5    and their revised sentencing recommendation from October 6th

6    and I just want to double check that everybody received those

7    sentencing recommendations; is that correct?

8          MR. PAULSEN:  Yes, Your Honor.

9          MR. FRISCH:  Yes.

10         THE COURT:  Okay.  Probation is recommending a

11   sentence of ten months custody with two years of supervised

12   release and some special conditions.  They are obviously

13   recommending the $100 special assessment and that Mr. Mackey

14   be excused from mandatory drug testing.  I've reviewed the

15   Government's objections to the presentence investigation

16   report, the defendant's objections to the presentence report.

17   Then there was an additional amendment to the objections that

18   was submitted on September 23rd.  The Government's reply to

19   those objections and then the defendant's sentencing

20   memorandum and the exhibits from September 26th; the

21   government's sentencing memorandum from October 3rd, as well

22   as Mr. Frisch's two supplemental submissions that were

23   submitted on October 12th.

24         Is that -- have I missed anything?  Let me as the

25   Government.

Proceedings                                                5

1       MR. PAULSEN:  I don't believe so, Your Honor.

2       THE COURT:  Mr. Frisch?

3       MR. FRISCH:  I don't believe so.

4       THE COURT:  Mr. Frisch, have you and Mr. Mackey read

5  and discussed the presentence report?

6       MR. FRISCH:  Yes.

7       THE COURT:  I am going to go through the calculation

8  of the advisory guidelines range as I'm required to do.

9  Probation calculates the total offense level as 12.  There's a

10 base offense level of 12 and Probation does not identify any

11 adjustments.  So the adjusted offense level is also 12.  The

12 defendant has a criminal history score of zero which

13 corresponds to a criminal history category one for a total

14 offense level of 12 and a criminal history category of one.

15 The guideline range is ten to sixteen months.

16      Both the Government and the defendant ask that I

17 incorporate the anticipated guidelines reduction, which is

18 scheduled to take effect next month, actually in a couple of

19 weeks, which is a reduction for zero-point offenders.  That

20 reduction, if applied, would take two points off and result in

21 a total offense level of 10, which lowers the guideline range

22 to six to 12 months.  I am going to apply that reduction

23 because Mr. Mackey would be entitled to it if he were

24 sentenced in a few weeks and it's a reduction that I've been

25 routinely applying to defendant's who appear before me for

1    sentencing who fall within that category.  But a sentence

2    within this range because the guidelines are not yet in effect

3    is treated as a variance.

4          I'm going to go over the objections to the

5    guidelines calculations.  First, Mr. Frisch objects that or

6    contends that Mr. Mackey is entitled to a two-point downward

7    adjustment because he had what is characterized as a minor

8    role in this conspiracy, citing that he wasn't present in the

9    chats when people discussed and formulated the false memes

10   that are in question and the only contact that he had with the

11   co-conspirators was in the context of these chats and because

12   he didn't actually create the memes himself or direct them.

13         I agree with Probation that the downward adjustment

14   is not applicable.  The downward adjustment for a minor role

15   is not applicable on these facts.  I don't think looking at

16   the evidence at trial that the defendant's role in this

17   conspiracy could in any way, shape or form be characterized as

18   minor.

19         The evidence showed that he understood the scope and

20   structure of the conspiracy and that he was one of the leading

21   and most influential members of the conspiracy because of the

22   wide reach of his influence on Twitter.  And it was this very

23   prominence on Twitter, the status about which he boasted and

24   of which he was proud, that enabled the conspiracy's

25   disinformation to spread.  I think one of the witnesses

Proceedings                                                    7

1   testified "like wild fire."

2          So it was -- his participation in achieving the

3   conspiracy's goals of lowering the turnout among certain

4   voters was significant and it was potentially more effective

5   because of his influence on Twitter.  He -- I think I said

6   enough about it, but he was dispensing advice on how to make

7   effective memes and was a leader in the conspiracy.  So I

8   agree with Probation that the two-point downward adjustment is

9   not applicable.

10         There is also a request -- the defendant also

11  requests that he get a downward departure on the theory that

12  his behavior was aberrant.  This is the -- under the

13  guidelines a downward departure in situations where, you know,

14  there's a momentary lapse or there was a single criminal

15  transaction in cases and it's akin to the analysis for the

16  minor adjustment, but this case under its facts is not about

17  minor lapses or momentary lapses in judgment.

18         I know the characterization of Mr. Mackey's conduct

19  is "two clicks," but that's not a fair characterization in my

20  view of what the case was at all.  This was a conspiracy that

21  took place over a series of months and intensified in the

22  lead-up to the presidential election so a downward departure

23  for aberrant behavior in my view is not appropriate.

24         I want to note some of the other objections to the

25  presentence investigation report.  Mr. Frisch objects to the

Proceedings                                    8

1   description of the offense and the offense conduct portion of

2   the presentence report.  I agree with Probation that the

3   offense conduct is accurately described and I'm not going to

4   change anything about that.

5            There is also an objection to Probation's statement

6   that Mr. Mackey hasn't accepted responsibility.  Obviously

7   he's gone to trial and is planning to challenge his conviction

8   on appeal, as is his right, but I think as a factual matter he

9   hasn't accepted responsibility, but obviously I recognize his

10  right to assert his innocence.  I'm not changing the

11  presentence report.  I'm accepting it as amended by the

12  addendum to the presentence investigation report.

13           I will say, though, I don't think there's any need

14  to discuss this further, I'm not going to be imposing those

15  internet restrictions.  I think both sides agree that those

16  are not appropriate in this case, and so those will -- I'm not

17  imposing those unless somebody else wants to talk about that

18  further.

19           I have reviewed carefully really everything about

20  this case including the parties' submissions, but I will hear

21  from you further if you wish to say anything else.

22  Mr. Frisch, I will hear from you first and then from the

23  Government and then if Mr. Mackey wants to say anything, I

24  will hear from him as well as well.

25           I will remind everybody to speak into the microphone

Proceedings                                    9

1   and not speak too quickly.

2          Mr. Frisch, anything else you would like to add

3   to --

4          And I also want to say that the submissions were

5   extremely thorough from both sides.

6          MR. FRISCH:  Your Honor, thank you.  Forgive me, I'm

7   getting over a long-lasting cold.  I just want to make sure

8   that the objection in my letter of September 22nd to paragraph

9   40 is reflected.  I don't recall if Officer Vest reflected

10  this in one of her addenda, but it's just a factual question

11  as to --

12         THE COURT:  Tell me what page that's on.

13         MR. FRISCH:  It's at paragraph 40 of the PSR.

14         THE COURT:  So it's page eight?

15         MR. FRISCH:  Let me see.

16         THE COURT:  No, page nine.

17         MR. FRISCH:  And in my letter, I pointed out that or

18  I asked that the paragraph be amended to note that Mr. Mackey

19  moved from Brooklyn to Manhattan in 2012 and left his job the

20  Dunham & Associates in Brooklyn in June of 2016.

21         THE COURT:  I thought you added that, no.

22         MS. VEST:  Your Honor, on page two of the addendum,

23  the fourth paragraph down, it does make the amendment to the

24  PSR incorporating that information.

25         MR. FRISCH:  Excellent.

Proceedings                                               10

1        THE COURT:  Okay.

2        MR. FRISCH:  Your Honor, if I can talk a little bit

3    this morning about why any prison under the circumstances of

4    this case is greater than necessary to achieve the statutory

5    goals of sentencing, why a noncustodial sentence, perhaps,

6    including community service, is sufficient within the meaning

7    of the statute and there's a number of reasons and I'll go

8    through them and I ask that they be considered separately, but

9    also together.

10        We know from the government that prison is not

11   necessary is not necessary to deter generally this kind of

12   conduct.  What do I mean?  According to the Government's

13   evidence, when Tia, T-I-A, when Tia reported to Mr. Microchip

14   that she had been suspended from Twitter for posing one of

15   these memes, Mr. Microchip said, quote, I guess don't post

16   those then, close quote.  And that was early morning of

17   Election Day 2016.  So even as the goal of the conspiracy as

18   charged by the Government was about to be realized, suspension

19   of Twitter was sufficient to stop these memes.

20        Whatever the circuit may have to say about

21   Mr. Mackey, Mr. Gulotta presentation of Mr. Microchip

22   established that his fear of disclosure of his identity

23   significantly contributed to resolution of a prospective

24   charge against him.  Just fear of disclosure, disclosure of

25   his identity, was sufficient.  And we know that Mr. Mackey

Proceedings                                    11

1   took the unusual step three years before his arrest to check

2   himself to check himself in for inpatient psychotherapy and

3   genuine self-correction just because his identity was made

4   public.

5          THE COURT:  I'm sorry to interrupt you, but can you

6   elaborate?  Was there a diagnosis?  I thought there was -- is

7   there a report or something from that facility?

8          MR. FRISCH:  I did not submit a report from the

9   facility.  My understanding, as consistent with the

10  pre-sentence report, it was a course of psychotherapy and very

11  intense counseling to address what Mr. Mackey believed was a

12  need to get his life on the right track essentially and was so

13  serious about it that he did it inpatient.

14         THE COURT:  But was -- and I just -- it's connected

15  to the doxing; is that correct?

16         MR. FRISCH:  That was the impetus for him to realize

17  that he needed to correct himself, that he needed help.

18         THE COURT:  And was there a diagnosis -- I mean,

19  typically if you're going to check yourself in and I'm not a

20  professional, but was there a particular condition that this

21  was supposed to address?

22         MR. FRISCH:  Can I have one moment?

23         THE COURT:  Sure.

24         (Pause in proceedings.)

25         MR. FRISCH:  Thank you, Judge.  My understanding was

Sophie Nolan, RPR - Official Court Reporter

1   there was no diagnosis in a formal sense in the way that

2   sometimes psychotherapists or counselors identify a particular

3   disorder or a particular condition.  It was more of addressing

4   what Mr. Mackey perceived to be the need for help with his

5   general life stuff, and general counseling and to do it in a

6   way that was intensive; that is, not one or two hours a week

7   but to go someplace where he could have the benefit of an

8   environment most conducive to essentially general

9   psychotherapy.  That's my understanding.

10          THE COURT:  Okay.  Go ahead.  I'm sorry to

11   interrupt.

12          MR. FRISCH:  So, for these reasons, the record

13   establishes that prison is not necessary, even for general

14   deterrence, because the folks that were doing this were

15   deterred by things before the government intervened and

16   certainly short of prison.

17          Second, in panel discussions within this courthouse,

18   in seminars, in public commentary and law reviews, as a

19   community we bemoan the focus on prison that is peculiar among

20   western nations.  But all of those concerns tend to fall by

21   the wayside when we appear for actual sentencings.  Most of

22   the time, virtually all the time, the Government can theorize,

23   well, prison is necessary in this case for a particular reason

24   or not and what we talk about outside of courtrooms at

25   sentencing really isn't addressed, but it's hard to think of a

Proceedings                                                    13

1    case or circumstances more -- making prison more unworthy as

2    here.  It isn't that we can't theorize that prison could

3    provide -- could advance the statutory goals of sentencing,

4    but it's hard to find a case that where prison seems not to be

5    something we must impose to paraphrase the statutory command.

6            The Government did not prosecute Mr. Mackey because

7    he formulated the memes or orchestrated anything.  The

8    Government prosecuted him over the past three years, not so

9    much to deter what was already deterred before and without

10   government intervention, but to make a point.  And there's

11   nothing about prison that necessarily would be required under

12   our circumstances to further make that point.

13           The Government says, well, Mr. Mackey has not

14   accepted responsibility, that his voluntary introspection,

15   self-correction, even three years before his arrest, his

16   idiosyncratic or at least it's no -- it doesn't obviate the

17   need to impose prison, but I think there are features of this

18   case that distinguish it.  The quantum of evidence in the

19   lion's share of federal criminal cases, maybe all of them or

20   virtually all of them, but certainly the lion's share proves

21   guilt to or close to a certainty.  It doesn't have to, but

22   invariably it does.  There's, for example, a robbery on a

23   surveillance video or there's an undercover drug transaction

24   or there are wiretaps or there's multiple investors relying on

25   the same misrepresentation, and more; the lion's share of

Proceedings                                                14

1    federal criminal cases prove some actual harm, not all of

2    them, but the lion's share narcotics bought and sold assets

3    stolen by force or by fraud, death, physical injury,

4    contraband is seized.

5           In these ways, this case is different from the

6    lion's share of federal criminal cases.  Now, to prove a

7    legally sufficient case, proof to a certainty is not required,

8    nor should it be and to prove a legally sufficient case of

9    conspiracy, proof of harm or reliance is not required, nor

10   should it be.  But finding legal sufficiency is a different

11   exercise than imposing prison.  Finding that our protocols for

12   fact finding establish legal sufficiency does not establish

13   that prison must follow.  The parsimony clause, our

14   longstanding and traditional national reference for liberty,

15   required by statutory command establishes an institutional

16   reluctance to impose prison, a humility about it.  It's not

17   the default.  The default is no prison.

18          Prison is the exception when we must, when it's

19   necessary.  None of us can purport to know with any degree of

20   certainty what Mr. Mackey was thinking of November 1st, seven

21   years ago; not the Government, not the jurors.  We do the best

22   we can to determine if someone formed criminal intent at the

23   time of action and we indulge less than certainty to sustain

24   legal sufficiency as we must and we bring to that process all

25   of our imperfections and frailties and maybe that's okay when

Proceedings                                      15

1    it comes to establishing legal sufficiency but we have to

2    think of it different when we decide whether we must impose

3    prison.

4            In fact, the standards are the opposite.  The

5    standard for legal sufficiency is to indulge all the

6    government inferences, but for prison it's whether we must do

7    it; whether the circumstances compel it.  It's dangerous for

8    the state to be so confident that it knows what someone was

9    thinking at a point in time that not only would we find

10   legally sufficient evidence to sustain a conviction but more

11   to vindicate -- and to vindicate a purported statutory command

12   defining a crime, but in addition, we're going to impose

13   prison; so certain are we that we know exactly what you were

14   thinking accommodating the Government's inferences of guilt

15   does not mean that we accommodate inferences that prison is

16   necessary.  It is and should be a different analysis.

17           Ricky Vaughn disappeared years ago, years before

18   Mr. Mackey's arrest.  Doug Mackey over the past years has done

19   everything right, everything just as he should have.  Letters

20   submitted to the Court describe him and these are quotes:  A

21   man of faith and integrity deeply committed to a life of

22   service to others.  He holds himself to a high standard

23   ethically, morally and conscientiously.  A person of

24   unwavering honesty and a strong moral compass who consistently

25   goes above and beyond to help those in need, demonstrating

Proceedings                                                        16

1    dedication to making our community a better place.  Those are

2    quotes, many of them from people who Mr. Mackey met in the

3    church as he's rededicated his faith to the church and as a

4    result of the inpatient counseling that he had.

5           The Court today is sentencing someone who

6    self-corrected on his own before and without government

7    intervention.  We know that suspension from Twitter, the

8    disclosure of identity, was sufficient to deter these means

9    and even if there remains some theoretical basis to believe

10   that prison is necessary, the arguments against it

11   substantially and compellingly outweigh the reasons for it.

12   And I will end with this thought:  It is a juror, one of the

13   jurors who wrote to the Court that a sentence of community

14   service in his -- in her view, would be sufficient, and I

15   believe she's right.

16          THE COURT:  All right.  Thank you so much

17   Mr. Frisch.

18          Mr. Paulsen.

19          MR. PAULSEN:  Thank you, Your Honor.  The Government

20   agrees with Probation that a guidelines term of incarceration

21   is the proper sentence in this case.  I don't want to belabor

22   the points that we've made in our submission as I know Your

23   Honor has read it, but I would like to emphasize the one

24   consideration that we think is especially important and that's

25   the need for general deterrence, particularly for conduct

Proceedings                                    17

1   affecting the very important right to vote.

2          As any number of courts have commented, including

3   the Supreme Court, voting is the right that secures all the

4   other rights that we hold dear as American citizens.  The

5   conspirators in this case south to undermine that very

6   important right.  They wanted to trick people into casting

7   their votes in a way that wouldn't count, so the votes would

8   essentially disappear.  And they did this during an election

9   season where voting results were expected to be very close, so

10  small numbers of votes wouldn't matter.

11         As the Court noted a moment ago, this plan wasn't

12  hatched on a whim.  It was discussed and strategized for

13  several weeks in private groups where the defendant had been a

14  leading member.  And it was executed using the methods the

15  defendant and his associates had honed and perfected

16  throughout the elections.  There was nothing about this

17  conduct that was worthy of the protection accorded to other

18  political activities.

19         The defendant and his co-conspirators were not

20  engaging in political arguments or making a social critique or

21  contributing to the marketplace of political ideas.  They were

22  just trying to injure the right to vote.  They were comitting

23  a fraud; one that was aimed at the most sacred rights

24  available in our democracy.  Now, among the factors this court

25  will always consider in crafting an appropriate sentence is

Proceedings                                    18

1   the need for deterrence.  The Government submits that it may

2   be likely that the defendant is not going to commit this

3   particular crime again.

4        While the defendant has been evasive about his

5   current online activities, he appears to have withdrawn from

6   social media after his doxing and the reckoning it has caused

7   in his personal life.  The defendant may be right; specific

8   deterrence does not weigh very heavily here.  General

9   deterrence, however, is an entirely different matter.  We

10  submit that the need for general deterrence in this case is

11  absolutely paramount.

12       The sentence this court imposes today is going to

13  send a message to the general public.  It's going to send a

14  message to the people that celebrated what the defendant did

15  and send a message to people considering following in his

16  footsteps.  It's going to send a message to everyone out there

17  willing to undermine the right to vote.  The sentence you

18  impose today is going to be all the more important given how

19  relatively easy it is to commit crimes like this anonymously.

20       The defendant has a case in point.  Despite becoming

21  an internet celebrity and the intense object of interest of

22  various journalists, he was able to remain anonymous for

23  years.  He used VPN and hid his real name.  Others will no

24  doubt follow in this path and try to undermine voting rights

25  while taking advantage of the broad anonymity that the

Proceedings                                      19

1    internet permits.

2             The sentence today needs to send a message to those

3    potential bad actors and the sentence today needs to let the

4    general public know that there will be significant

5    consequences for crossing that line and undermining the right

6    to vote.  For these reasons as well as all the others we

7    outlined in our submission, Your Honor, the government submits

8    that a term of incarceration is essential here.

9             We submit that a sentence between six and twelve

10   months, as recommended by the guidelines, would be sufficient

11   but not more than necessary to serve the purposes of

12   punishment and we ask that the Court impose such a sentence.

13   Thank you.

14            THE COURT:  Thank you so much.

15            Mr. Mackey, you have a right to speak if you would

16   like to be heard.

17            THE DEFENDANT:  No, thank you, Your Honor.

18            THE COURT:  Thank you, so much.

19            Well, it is, to say the least, not an easy task to

20   impose a sentence on any human being because of what it means

21   for you, Mr. Mackey, and because of what it means for your

22   family.  I do want to acknowledge your family, both your wife

23   and your mom, who are on the phone, your father and your

24   brother who have been here for every single day of these

25   proceedings.  I watched as they came and supported you and it

Proceedings                                              20

1   must have been agonizing for them; first to learn about what

2   you had been doing which appears to have come as a complete

3   surprise and then to have to come here and watch their child

4   on trial in a criminal case in a federal courthouse.  It is

5   one of the sad constants in criminal cases that innocent

6   people, like your parents, like your siblings and like your

7   wife and now your new baby, suffer because of your actions.

8          I also want to assure you that every judge in this

9   courthouse, including me, considers regularly whether prison

10  is an appropriate sentence.  As a Court who presides over the

11  alternatives to incarceration, one of the programs in this

12  courthouse, I am keenly aware of the difficulties, to say the

13  least, faced by people who have a prison sentence and I, like

14  other courts, regularly conclude that prison is not necessary

15  even when a guideline sentence is high.

16         So, I want I want to begin by saying that the

17  starting point as it is in every case is determining the

18  guidelines, but although I have done that, the sentence I

19  impose today is the sentence I would have imposed regardless

20  of what the guidelines are.

21         In considering what the appropriate sentence is in

22  this case, I look to the statute Section 3553(a) factors and

23  the factors include that the Court consider the following

24  factors in determining a sentence that is -- that is

25  sufficient but not greater than necessary to meet the goals of

Proceedings                    21

1    sentence.  Those factors include the seriousness of the crime,

2    that the sentence show with respect for the law, that the

3    sentence be fair and just, that it act as a specific deterrent

4    to the defendant in front of me, as a general deterrent to

5    anyone else who would consider engaging in the same conduct,

6    to the extent the defendant needs rehabilitation, that's

7    another factor, and I also consider your history and your

8    background.

9          It is with these principles that I sentence you

10   today.  I have given careful consideration to the arguments

11   that your very excellent lawyer has made in your defense.

12   I've read the letters submitted by your friends and family.  I

13   want to be clear about what you are not being sentenced for

14   today.  You are not being sentenced for your political beliefs

15   or for expressing those beliefs.

16         One of the foundational principles of our country,

17   of this democracy, is that people cannot be prosecuted for

18   their political beliefs or for expressing them.  Each one of

19   us has the right to hold opinions and to express those

20   opinions.  You have that right.  You are not being prosecuted

21   for your support of a particular candidate.  Citizens of this

22   country have the right to support the candidate of their

23   choice and to express their support.  You have that right.

24   You are not being sentenced today for your beliefs or what

25   your beliefs might have been, of people of different

Proceedings                                                22

1   backgrounds, different races or for your beliefs about women.

2   You are not being sentenced for expressing opinions about any

3   of those groups.  Every person has the right to express his

4   opinion.  Even when those views are repellent, you have that

5   right.

6            What you are being sentenced for is the offense for

7   which a unanimous jury found you guilty, and that is

8   conspiring with other people to injure, oppress, threaten or

9   intimidate one or more people in the free exercise and

10  enjoyment of a right or privilege secured to them by the

11  Constitution and the laws of the United States.  That's the

12  right to vote.

13           It is one of the cornerstones of our democracy.

14  That's the right that you conspired with others to take and

15  unlike your expressions of political opinions, your actions in

16  connection with this conspiracy are not protected by the First

17  Amendment Judge Garaufis held, and he was correct, the

18  evidence bore this out that this case was about conspiracy and

19  injury, not speech.  Speech was just the way that you and the

20  method that you used to commit this crime.

21           You're obviously a well-educated person and

22  intelligent but you used your considerable talent and skills

23  not to persuade other people to believe like you believe but

24  to try to take something precious from certain classes of

25  voters, voters who have the same right that you do, to vote

Proceedings                                                23

1    for the candidate of their choice and to have that vote count.

2    You decided that certain voters didn't deserve that right;

3    either because of who they were, what they looked like or what

4    candidate they supported.  The fact that you employed speech

5    in this conspiracy was only in the service of lies.  It was

6    just a tool.

7            It's been said throughout the trial and suggested

8    today that nobody would have fallen for the scheme, for the

9    voting by text meme, but one of the people that I think was

10   one of your followers seemed to fall for it because at some

11   point on Twitter or on a chat the person said, Why don't we

12   get to do this."  So, clearly somebody thought it would work

13   and Mr. Samiri (ph)  from I-Vision who was the company that

14   least the short code was concerned that people might think

15   this was legitimate because it wouldn't be outside of the norm

16   for something like that to happen in the near future.

17           So, how to analyze this conduct in the framework of

18   the 3553(a) factors and the goals of sentencing.  I want to

19   focus on a couple of those goals and the first is this

20   sentence has to reflect the seriousness of the crime.  There's

21   no question that this is a serious crime.  I think the

22   Government quoted *Westbury against Sanders* from the Supreme

23   Court, but in 1964 the Supreme Court said that, "No right is

24   more precious in a free country than that of having a voice in

25   the election of those who make the laws under which as good

Proceedings                                           24

1   citizens we must live.  Other rights, even the most basic, are

2   illusory if the right to vote is undermined."

3             Dr. Martin Luther King, in his *Give Us the Ballot*

4   speech said that, "The denial of this right, the sacred right

5   to vote, is a tragic betrayal of our democratic tradition and

6   it is democracy turned upside down.  So long as I do not

7   firmly and irrevocably possess the right to vote, I do not

8   possess myself.  I cannot make up my mind.  It is made up for

9   me.  I cannot live as a democratic citizen observing the laws

10  I have helped to enact.  I can only submit to the edict of

11  others."

12            Conspiring to injure people in the free exercise of

13  the sacred right to vote is nothing short of an assault on our

14  democracy.  The sentence has to reflect the seriousness of

15  that attempt.  This crime, as Judge Garaufis expressed so

16  eloquently in his decision denying the motion to dismiss, has

17  taken many forms over the years.  The method that you and your

18  co-conspirators employed was, perhaps, just as insidious and

19  perhaps even more cloaked in anonymity with the ability to

20  reach untold numbers of people all over the country using

21  familiar-seeming imagery to think people into thinking that

22  they could vote in a way that they couldn't vote, the

23  potential for depriving people of these basic rights is

24  staggering.

25            Another one of the 3553(a) factors is deterrence,

Proceedings                                          25

1    general deterrence.  This sentence must act to deter anyone

2    else who would do what you did.  The sheer number of people

3    who were participating, and this shows that this is something

4    that people may seek to do again and it must be clear to

5    anybody else who would seek to do this, to steal someone's

6    fundamental right to vote, that there will be a consequence.

7    There's also a matter of specific deterrence and also in

8    connection with the need that the public is protected from

9    future crime.

10           You've testified that you've changed.  That's what

11   you told the jury.  You apologized to your family for saying

12   hateful things about different kinds of people.  They were

13   entitled to that.  Your lawyer has said and you testified at

14   trial that you suffered a great deal when you lost that cloak

15   of anonymity, when your identity was revealed and that you got

16   treatment for that.  I have no doubt in my mind that that was

17   a very difficult time for you, but it's not clear to me that

18   that treatment was connected to the conduct at issue here.

19   Every judge in the sentencing proceeding wants to know as much

20   as possible about the person being sentenced so that I can

21   make sure that the sentence is in line with those goals of

22   sentencing.

23           But I realize that there's a lot that I don't know

24   about you.  It's my observation is that you reveal what you

25   want to reveal.  You've chosen not to reveal what you're doing

Proceedings                                    26

1    now except for a sort of a vague label of anonymous political

2    commentary.  I don't know what that means.  I guess you're

3    entitled not to tell me what you do, but it makes it difficult

4    for me to be certain and confident that this is not something

5    that you will repeat in some other form.

6            So taking into account all of these factors a

7    non-incarceratory sentence would not serve the purposes of

8    sentencing.  It would not reflect the seriousness of the

9    crime.  It would not act as a deterrent either to you or other

10   people and I can't be certain that the public would not be

11   protected.

12           So, for that reason, I have concluded that a

13   sentence of seven months in prison with two years of

14   supervised release is the appropriate sentence.  As I said

15   before, I decline to impose those conditions that Probation

16   sought.  I don't think they were -- I understand the

17   rationale, but I think under these circumstances, unlike other

18   cases where those conditions are imposed, that there's too

19   great a risk of infringing on your First Amendment rights.

20   You will, however, have to cooperate with Probation and abide

21   by whatever conditions they impose.

22           I do want to address a request that has been made to

23   Probation twice, to the probation officer in this case.  That

24   request was that if she learns where you are working and with

25   whom, that she withhold that information from the Court and

Sophie Nolan, RPR - Official Court Reporter

Proceedings                              27

1   instead notify your lawyer so that he can apply to the Second

2   Circuit.  That is not an appropriate request.  Probation is an

3   arm of the Court and you can't ask a Probation officer to keep

4   information from the Court.  Probation records are sealed so

5   the information will not become public.  In addition to the

6   seven months, I'm also imposing a $15,000 fine.  The record

7   reflects that you have an ability to pay and it is also

8   warranted by the circumstances of this case.

9        I am going to ask Probation Officer Vest to just --

10  typically we impose a payment schedule and I would just seek

11  your recommendation on that.

12       MS. VEST:  Yes, Your Honor.  So, the fine would be

13  due immediately.  Our recommendation for a payment schedule

14  would be a rate of $25 per quarter while the defendant is in

15  custody and a rate of 10 percent of gross monthly income while

16  on supervised release.

17       THE COURT:  All right.  Thank you.

18       I also do want to notify you of your right to

19  appeal.  As your lawyer already knows, you must file a Notice

20  of Appeal within 14 days of the filing of the entry of a

21  judgment or within 14 days of the filing of a Notice of Appeal

22  by the Government.  If you ask, the Clerk will prepare and

23  file a notice of appeal for you.  If you can't afford to pay

24  for an appeal or for an appellate lawyer, you have the right

25  to apply for leave to appeal in forma pauperis.  That means

Proceedings                                    28

1   you can file to have the Court waive the filing fee.  On

2   appeal, you can also apply for a court-appointed lawyer.

3          Now, I didn't get a response from the Government on

4   this question.  Mr. Frisch has asked that I give him bond

5   pending appeal.

6          Do you have a position on that?

7          MR. PAULSEN:  Yes, Your Honor.  We oppose them.

8          THE COURT:  Put your reasons on the record, but I

9   think I know them.

10          MR. FRISCH:  So, the standard as interpreted by the

11   Second Circuit for bond pending appeal is whether there are

12   substantial and nonfrivolous issues and the purpose of the

13   appeal is for other than delay.  There are many issues, as

14   we've discussed in pretrial and post-trial briefing, that are

15   novel, interesting, that are certainly not frivolous and are

16   substantial and create, in this case, a real possibility on

17   any one of a number of grounds of reversal.

18          We've litigated this and discussed this so much both

19   with Your Honor and with Judge Garaufis that I will not seek

20   to identify all of them today, but the highlights are venue,

21   the application of Section 241 to this conduct, the defense's

22   view of a significant Brady violation in this case and the

23   insufficiency of the evidence.  Those are the ones that come

24   first to my mind.  There may be others.

25          I think the issues in the nature of this case which

Proceedings                                    29

1   is a first -- it's the first type of case predicated on this

2   type of conduct, should be subject to Appellate review and

3   Appellate resolution before we wind up with a situation where

4   Mr. Mackey has served his sentence before the Appellate court

5   can address it.  So, for those reasons, we ask the Court to

6   stay the sentence pending appeal and to keep in place the

7   conditions release to which Mr. Mackey has been completely

8   compliant.

9            THE COURT:  Mr. Paulsen?

10           MR. PAULSEN:  Yes, Your Honor.  Our reading of the

11  statute, 3143(b)(1), indicates that bail is granted in such

12  circumstances -- in extraordinary circumstances where it's not

13  for the purpose of delay, as the defendant noted, but it

14  raises a substantial question of law likely to result in

15  either reversal or an order for a new trial.  While the memes

16  used by the defendant in this case were different than some of

17  the other cases.  The established legal principles that Judge

18  Garaufis elucidated in his long opinion have been around for

19  100 years and our review of law is that this is not a case

20  where an appellate court is likely to disturb Judge Garaufis's

21  findings of the law nor find that the jury's decision was not

22  bounded in fact.

23           We do not believe these are the sort of

24  extraordinary circumstances where the Court should postpone

25  the defendant's sentence for what will likely be a lengthy

Proceedings                                30

1    appeal.

2          THE COURT:  Well, I agree that the question -- first

3    of all, the statute, 18 U.S.C. Section 3143(b), permits the

4    Court to grant bail pending appeal and the applicable part of

5    that statute is -- is whether there is a substantial question

6    of law or fact that's likely to result in a reversal in order

7    for a new trial or for a non-incarceratory sentence or for a

8    reduced sentence.  And a substantial question is a close

9    question or one that could very well be decided either way.

10         Having just rejected the Rule 29 and Rule 33 motions

11   and having carefully considered all of those arguments, I do

12   not believe this is one of those cases where bail pending

13   appeal is appropriate.  Obviously you can go to the Second

14   Circuit and they may feel differently.

15         I will, however, permit Mr. Mackey to surrender and

16   I think probably sometime in January if that's a date that is

17   a time that is after the holidays.

18         MR. FRISCH:  I'm thinking if that will give us

19   enough time, give the Circuit enough time to hear us and I

20   think the answer is if we need more time to apply for it then,

21   but I think January after the holidays is otherwise okay.

22         THE COURT:  How is January 18th?  One other thing I

23   neglected to do was impose the $100 special assessment which

24   I'm doing.

25         Are there any other matters that need to be

Proceedings                                             31

1  addressed?

2          MR. PAULSEN:  No, Your Honor.  There were no open

3  counts.  Nothing further.

4          THE COURT:  Mr. Frisch, anything else?

5          MR. FRISCH:  Your Honor, if I can ask that Your

6  Honor recommend to the Bureau of Prisons that Mr. Mackey be

7  designated to the satellite camp in Miami as his first choice

8  and if that's not available the satellite camp in Pensacola,

9  Florida.  As Your Honor knows, those are the two satellite

10 camps in the state of Florida as far as I know.  As, Your

11 Honor knows, Mr. Mackey and his family live in Florida.

12         THE COURT:  I can make that recommendation.  Okay.

13 All right.  Thank you so much, everybody.

14         MR. PAULSEN:  Thank you, Your Honor.

15

16         (Matter adjourned.)

17                         - ooOoo -

18

19

20

21

22

23

24

25